TORRENCE *v*. STATE OF INDIANA.

[No. 1069S244.  Filed February 1, 1971.  Petition for rehearing denied March 15, 1971.]

*Palmer K. Ward,* Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Edward Squire Neal,* Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was charged by indictment with the crime of first degree murder. Trial by jury resulted in a finding of guilty of murder in the second degree. Appellant was accordingly sentenced to the Indiana State Prison for life.

The record in this case discloses the following facts:

On June 8, 1968, George Wilmington, Richard Robinson and Mrs. Gwendolyn Allen were in the Sunset Tavern on Indiana Avenue in Indianapolis having a few drinks. Mrs. Allen telephoned her son, William Harris, the decedent in this case, to come and drive Mrs. Allen and her companions home, because they felt that they had been drinking too much to drive themselves. Shortly afterward William Harris arrived with a friend, Stephen Gachett. After remaining in the tavern some five minutes with Mrs. Allen and her companions all five left the tavern. As they were leaving William Harris saw his illegitimate child in another car with its maternal grandmother and the appellant. He called his mother's attention to the presence of her grandchild, whereupon Mrs. Allen walked over to the car to see the baby. However, as Mrs. Allen arrived at the car the appellant, who was waiting at a stop light, drove away as the light changed. The five persons who had come from the tavern proceeded to follow appellant's car with Gachett driving one car occupied by Robinson and Mrs. Allen, and Harris driving another car occupied by Wilmington. They proceeded to drive through the neighborhood in a circuitous route, running at least two stop lights enroute, with some shouting going on between the occupants of the cars. At one point appellant stopped his car and went to the trunk where he removed an object. This apparently alarmed his pursuers, who drove past appellant and continued on down the street. However, the appellant again entered his car and in turn pursued the other two cars.

When they stopped for a stop light, the appellant also stopped, alighted from his car with a gun in hand and approached the vehicles, asking who he was supposed to be running from. He was told that he was not running from anyone, that Mrs. Allen merely wanted to speak to her grandchild. Whereupon the appellant indicated that she might do so. When Mrs. Allen approached appellant's automobile, she placed her hand on the side of the car as she started to speak to the child. Whereupon appellant struck her in the mouth with the gun fracturing both her upper and lower jaws. Harris seeing his mother struck by the appellant alighted from his car and went to the trunk of the car where he stooped over while facing in the direction of the appellant, who was some two or three car lengths away. At that point the appellant raised the gun and fired at Harris. The bullet struck him in the chest, entered his heart and caused almost instant death.

Appellant first claims the trial court erred in failing to dismiss a sworn juror after the juror indicated he did not agree with the stated law concerning the definition of premeditation. Although this record does not contain the voir dire examination of the jury, it appears from appellant's motion for new trial that the situation arose after a prospective juror under questioning was preemptorily dismissed because of his erroneous view of the law on premeditation, whereupon a juror who had already been accepted volunteered the information that he too shared the same belief as the juror who had just been dismissed. However, there is nothing in this record to indicate that the appellant made any objection to this juror continuing to sit nor is there any indication that his peremptory challenges had been exhausted nor that he made any attempt to exercise any such challenge in regard to the juror. In the absence of a special bill of exceptions containing the voir dire examination, there is nothing before us upon which error could possibly be predicated. *Nix* v. *State* (1960), 240 Ind. 392, 166 N. E. 2d 326. Since the appellant does not show or argue in his brief that

he made any objection to the juror serving, any objection which he might have had is deemed waived. *Boyle* v. *State* (1955), 234 Ind. 215, 125 N. E. 2d 707; *Sutton et al.* v. *State* (1957), 237 Ind. 305, 145 N. E. 2d 425.

Appellant next claims the trial court erred in admitting State's Exhibit 4 into evidence for the reason that said exhibit was a photograph of the body of the decedent showing the fatal wound and that such photograph served only to inflame the jury and had no probative value in establishing any material part of the case for the reason that Dr. Gifford had already by his testimony established the cause of death. Appellant cites the case of *Kiefer* v. *State* (1958), 239 Ind. 103, 153 N. E. 2d 899, to support his position. In *Wilson* v. *State* (1966), 247 Ind. 680, 221 N. E. 2d 347, 9 Ind. Dec. 401, and in the recent case of *Schmidt* v. *State,* decided December 29, 1970, 255 Ind. 573, 265 N. E. 2d 219, 24 Ind. Dec. 164, this Court pointed out that the real issue is not the revolting or gruesome nature of the picture or exhibit, but whether or not it is relevant to the issues involved in the case. In the case at bar the doctor had testified as to the place of entry of the bullet in decedent's body and to the damage the bullet had done to decedent's internal organs. However, this does not mean that the State could not show a picture of decedent's body for the purpose of showing the wound which had been inflicted. The picture in question shows the body in its natural state and the wound as described by the doctor. We see nothing about the picture which would warrant a reversal of this case. As we stated in *Schmidt, supra,* any pictures of the victim of the homicide are naturally gruesome to the person of average sensitivity. However, this does not mean that they are not admissible to demonstrate the evidence in the case. We, therefore, hold that the trial court did not err in admitting State's Exhibit 4 into evidence.

Next appellant claims the trial court erred in refusing to give certain of his tendered instructions. However, the motion

for new trial does not assign as a ground therefor the refusal to give any of these instructions. The appellant has, therefore, waived any error which the trial court may have committed in failing to give these instructions by his failure to assign the ruling of the trial court as a ground in his motion for new trial. *Payton* v. *State* (1965), 246 Ind. 401, 206 N. E. 2d 143, 5 Ind. Dec. 255; *Hartsfield* v. *State* (1950), 228 Ind. 616, 94 N. E. 2d 453. We have, however, examined the tendered instructions by the appellant and find that in each case the tendered instruction had been amply covered by the instructions given by the trial court. There was, therefore, no error on the part of the trial court in refusing any of the tendered instructions. *Jones* v. *State* (1964), 244 Ind. 682, 195 N. E. 2d 460, 2 Ind. Dec. 578; *Beavers* v. *State* (1957), 236 Ind. 549, 141 N. E. 2d 118.

Appellant next claims that the finding of the court was contrary to law and not sustained by sufficient evidence. The appellant first recognizes the well established principle of law that we will not weigh the evidence but will consider only that evidence most favorable to the decision of the trial court. *Smith* v. *State* (1969), 252 Ind. 425, 249 N. E. 2d 493, 18 Ind. Dec. 189. However, appellant argues that the acts of Wilmington, Allen, Robinson and Harris created such an atmosphere of potential danger to the appellant that he was justified in being apprehensive and that his act of shooting at the decedent Harris was merely an act of self-defense; therefore, there is no evidence of probative value which would justify the finding of guilty of murder in the second degree. We do not agree with appellant in this contention. Although the named persons did without question create an atmosphere which certainly could have generated apprehension on the part of the appellant, it is pointed out that there came a time during the "chase" when appellant stopped his car and obtained something from the trunk at which time the evidence shows his pursuers passed him and had apparently abandoned their "chase." At this point the

appellant became the aggressor overtaking his erstwhile pursuers and provoking an altercation on his own. First he struck Mrs. Allen in the mouth with a weapon with such force as to break both her upper and lower jaws, and then took deliberate aim and shot Harris through the heart at a time when Harris had no weapon on his person or in his hand. These facts constitute sufficient evidence from which the jury could properly conclude that at the time the homicide was actually committed appellant had become the aggressor in such a manner and to such an unreasonable extent as to constitute second degree murder. *Brown v. State* (1969), 252 Ind. 161, 247 N. E. 2d 76, 17 Ind. Dec. 296.

We, therefore, hold that the decision in this case is sustained by sufficient evidence and is not contrary to law.

The trial court is, therefore, affirmed.

Arterburn, C.J., and DeBruler, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 266 N. E. 2d 1.