Charles LEE, Jr., Thomas Knight, Dave Martin, Vernon Carter, Louis Hollingsworth, Mike Runau, Defendants-Appellants,

v.

STATE of Indiana, Appellee-Plaintiff.

No. 1-579A133.

Court of Appeals of Indiana,
First District.

Dec. 18, 1979.

Rehearing Denied Jan. 22, 1980.

Jack N. VanStone, Thomas G. Krochta, Rice & VanStone, Evansville, for Charles Lee, Jr., Thomas Knight, Dave Martin, Vernon Carter, Mike Runau.

John D. Clouse, Michael C. Keating, Evansville, for Louis Hollingsworth.

Theodore L. Sendak, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

NEAL, Judge.

Defendants-appellants Dave Martin (Martin), Thomas Knight (Knight), Vernon Carter (Carter), Charles Lee, Jr. (Lee), Louis Hollingsworth (Hollingsworth), and Mike Runau (Runau) were convicted of conspiracy to commit professional gambling.

They raise the following issues for our review:

(1) Whether the trial court erred in overruling the defendants' motion to dismiss.

(2) Whether the trial court erred in denying the defendants' motion for separate trials.

(3) Whether the trial court erred in admitting evidence relating to the charges without limitation as to the time of the occurrences.

(4) Whether there was sufficient evidence introduced at trial to sustain the verdict of the jury.

(5) Whether the trial court erred in denying defendants' motion to correct judgment.

We affirm.

The evidence most favorable to the State discloses that Knight operated a tavern in Evansville by the name of "Knight's Nite Spot." In a room in the rear of the same building gambling operations were conducted. The room was equipped with a modified pool table upon which dice was played. A blackjack table, with high stools around it upon which the customers could and did sit, was provided. Food, beer, and coffee were served without charge to customers and persons in attendance. Admittance was gained to the room by pressing a buzzer, whereupon a door attendant would then scrutinize the person seeking admittance through a peephole before allowing him to proceed. One doorkeeper, employed by Knight, testified that it was his duty to attend the door, to keep out undesirables, and to watch for the police. Blackjack and

dice were played for money, some customers winning or losing as much as $500 in a single evening. Customers played the house, not each other. Payroll checks were cashed. Chips, in varying denominations from one dollar to twenty-five dollars, were sold to customers by attendants, and thereafter cashed, if any remained, at the close of play.

All of the defendants participated in one way or the other in the management and operations of the enterprise. Their duties varied, depending upon who was available, or working, and according to the exigency of the situation. They sold and cashed chips, were stickmen, attended the door, dealt cards, or acted in a supervisory capacity.

The room was maintained for gaming purposes for as much as two years continuously in Knight's Nite Spot, terminating there sometime in 1977. Thereafter, it was reestablished in what was described as the antique shop at 1021 Kentucky Avenue, just down the alley from Knight's Nite Spot. The new location, owned by Hollingsworth, was an old residential building. There, the gaming operation was renewed in the same manner as before, with all defendants participating as before. Operations, so far as the record discloses, terminated on January 13 or 14, 1978, when police officers began surveillance of the house.

Upon discovery of the police activity, the doorman alerted Knight, whereupon the games were stopped, and the equipment hidden. Some of the customers and some defendants stayed in the house the remainder of the night and into the next day, apparently to avoid detection. Police surveillance detected nine cars parked outside, and further detected numerous people entering and leaving the suspected premises.

I.

■ Defendants argue that the trial court erred in overruling their motion to dismiss which stated that their prosecution was a result of selective and discriminatory enforcement of the gambling laws of Indiana. The gist of the defendants' argument

is that while gambling laws were enforced against them, religious, social, and veterans organizations were allowed to conduct gambling operations without prosecution. Citing *Yick Wo v. Hopkins,* (1886) 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, they argue that they were denied equal protection of the law as guaranteed by the Fourteenth Amendment to the Constitution of the United States and Article 1, § 23 of the Constitution of Indiana. *Yick Wo* is distinguishable from the case at bar in that it dealt with discriminatory enforcement of a city ordinance against a readily identifiable class, but the defendants before us are not part of a particular group which was singled out for prosecution.

In *Highland Sales Corp. v. Vance,* (1962) 244 Ind. 20, 186 N.E.2d 682, our Supreme Court dealt with an action by a department store and its employees who sought to enjoin the enforcement of a law which prohibited the operation of the store on Sunday. The appellants claimed that they were denied equal protection since other businesses such as drug stores, gasoline stations, and restaurants were allowed to operate on Sundays. The court stated that the failure to prosecute some who violate the law does not excuse violations by others, nor should it bar their prosecution. Also, there was no personal animosity which supported the discrimination argument.

Noting the judiciary's role in relation to a prosecuting attorney's discretionary power, the court said, at 689:

> "We do not minimize the duty of the prosecuting attorney to exercise the power of his office fairly and in good faith. However, in order to warrant judicial interference with the office of the prosecuting attorney because of either nonfeasance or malfeasance, it must be made to appear from the facts alleged that such misconduct consists of a gross and intentional failure or refusal to enforce the law in some *major area* or that such misconduct is actually the product of bad faith or evil design." (Emphasis added.)

In light of the heavy case load facing a prosecuting attorney, it is clear that the failure to prosecute charitable organizations in no way establishes that the defendants were denied equal protection. The State showed that there was a reasonable basis for the way the gambling laws were enforced.

## II.

■ Hollingsworth and Runau allege that the trial court erred in denying their motions for separate trials pursuant to Ind. Code 35–3.1–1–11 (Supp.1979) which were filed on the morning of the trial. The statute reads as follows:

> "(a) Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses. In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense with a view to the number of offenses charged, the complexity of the evidence to be offered, and whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

> (b) Whenever two (2) or more defendants have been joined for trial in the same indictment or information and one (1) or more defendants move for a separate trial because another defendant has made an out-of-court statement which makes reference to the moving defendant but is not admissible as evidence against him, the court shall require the prosecutor to elect either:

> (1) a joint trial at which the statement is not admitted into evidence;

> (2) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted; or

> (3) granting the moving defendant a separate trial.

*In all other cases, upon motion of the defendant or the prosecutor, the court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant.*

(c) When such information would assist the court in ruling on a motion for a separate trial, the court may order the prosecutor to disclose to the court in camera any statements made by the defendants which the prosecutor intends to introduce in evidence at the trial." (Emphasis added.)

Defendants argue that part (a) gives them the right for separate trials. However, part (a) deals with severance of offenses, not separate trials. Defendants did not ask for severance of offenses. The statutory language emphasized above is the relevant language here, and it states that the granting of separate trials is at the discretion of the trial court. In a denial of a motion for separate trials, there is reversible error only when there is a clear showing that the trial court abused its discretion. *McFarland v. State,* (1977) Ind.App., 359 N.E.2d 267.

When a pretrial motion for separate trials is overruled any error is deemed waived by failure to renew the motion before or at the close of all the evidence. Ind.Code 35–3.1–1–12(b). We find no indication that Hollingsworth and Runau renewed the motion, and thus, they waived their right to separate trials.

### III.

Defendants argue next that the trial court erred by admitting testimony that went beyond the time frame of the statute of limitations. Defense counsel objected to testimony by L. P. Dallas and Sidney Gynn concerning the times when they participated in gambling activities. In both instances, the record shows that immediately after the objection was overruled, the prosecution pinpointed the time in question which was within the statute of limitations.

### IV.

■ The sufficiency of the evidence is also challenged by the defendants. When we review the sufficiency of the evidence, we consider only that evidence of probative value most favorable to the State, together with reasonable inferences which may be drawn therefrom. We will not disturb a verdict if the evidence and inferences would permit the trier of fact to find the existence of the elements of the crime beyond a reasonable doubt. *Diggs v. State,* (1977) Ind., 364 N.E.2d 1176.

In *Duling v. State,* (1976) Ind.App., 354 N.E.2d 286, Judge Lowdermilk noted the factors which constitute a conspiracy, at 289:

"In order to be a conspiracy there must be an intelligent and deliberate agreement to commit the offense charged. It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to do the acts and commit the offense, though the agreement is not manifest by any formal words. Concurrence of sentiment and co-operative conduct in the unlawful and criminal enterprise are the essential ingredients of criminal conspiracy. There must be an agreement and there must be evidence to prove the agreement directly, or such a state of facts that an agreement may be legally inferred. Conspiracies cannot be established by a mere suspicion. Evidence of mere relationship of association between the parties does not show a conspiracy." (Citation omitted.)

He also said that an agreement need not be directly proven, but it may be inferred from other facts.

The conspiracy statute, Ind.Code 35–41–5–2, reads, in pertinent part:

"(a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. . . .

(b) The state must allege and prove that either the person or the person with

whom he agreed performed an overt act in furtherance of the agreement."

Ind.Code 35–45–5–3 (Supp.1978), the Indiana professional gambling statute reads as follows:

"A person who knowingly or intentionally:

(1) engages in pool-selling;

(2) engages in bookmaking;

(3) maintains, in a place accessible to the public, slot machines, one-ball machines or variants thereof, pinball machines that award anything other than an immediate and unrecorded right of replay, roulette wheels, dice tables, or money or merchandise pushcards, punchboards, jars, or spindles;

(4) conducts lotteries, gift enterprises, or policy or numbers games, or sells chances therein;

(5) conducts any banking or percentage games played with cards, dice, or counters, or accepts any fixed share of the stakes therein; or

(6) accepts, or offers to accept, for profit, money or other property risked in gambling;

commits professional gambling, a class D felony."

Testimony of the State's witnesses at trial showed that the defendants worked together in conducting the gambling operation by selling and cashing chips, working as stickmen in the dice game, or dealing blackjack. From this testimony the jury could reasonably infer that the intent, agreement, and overt act required by Ind. Code 35–41–5–2 took place and were supported by sufficient evidence.

### V.

Defendants also contend that the trial court erred by denying the defendants' motion to correct judgment in which they argued that the jury's verdict was inconsistent. Defendants were found guilty of the conspiracy charges, but the jury failed to return a verdict regarding the substantive offenses which were charged.

In proving a conspiracy, it is not necessary to prove that the object of the conspiracy has been carried out. *Bates v. State,* (1977) Ind., 366 N.E.2d 659. Once the conspiracy has been established, we need not address the substantive offense. In *Bates, supra,* there was evidence tending to show murder and evidence tending to show conspiracy to commit murder. The defendant was convicted upon the conspiracy count. The court held that under the standard of review such a verdict is not objectionable.

One matter remains though not raised in the briefs, that of the sentencing. Three defendants, Knight, Hollingsworth, and Carter, were each convicted on Count V and Count VI of the indictment. The imposed sentence was one general sentence to each defendant, and the trial court did not designate whether the sentence was imposed on Count V or Count VI. The trial court is directed to correct the sentence and sentence and/or dispose of each count separately. For the reasons stated above the decision of the trial court must be affirmed upon correction of the sentencing as directed.

Affirmed and remanded for correction of sentence.

LOWDERMILK, P. J., and ROBERTSON, J., concur.