Alan H. SEDELBAUER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Defendant Below).

No. 3–1182A321.

Court of Appeals of Indiana,
Third District.

Nov. 16, 1983.

Rehearing Denied Jan. 11, 1984.

1160

Kenneth R. Scheibenberger, Lebamoff Law Offices, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., William E. Daily, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Presiding Judge.

On July 15, 1982, appellant Alan Sedelbauer was convicted by a jury of distributing obscene matter for consideration. He now appeals from subsequent entry of judgment.

The record discloses that Sedelbauer worked in an adult bookstore in Fort Wayne, specializing in sexually oriented magazines, films, and paraphernalia. On June 15, 1981, Detective Charles Dennis entered the premises, and upon the recommendations of Sedelbauer, purchased a film entitled "Cruising." This film depicts male homosexuals engaged in acts of fellatio, anal intercourse, and masturbation. It does not aspire to serious literary, artistic, political, or scientific merit. This film is aimed at a market of male homosexuals. Following a viewing of the film, the jury returned a verdict of guilty.

On appeal, Sedelbauer presents the following issues:

(1) Was the evidence presented sufficient to sustain a conviction?

(2) Did the trial court have jurisdiction over this matter?

(3) Did the trial court err in refusing to read Sedelbauer's tendered instruction that the film should be judged based on its prurient appeal to the male homosexual community?

(4) Did the trial court err in allowing the appearance of a special prosecutor?

(5) Was a mistrial warranted by the destruction of a small portion of the taped voir dire proceedings?

(6) Did the trial court err in refusing to allow two of Sedelbauer's witnesses to testify?

(7) Were Sedelbauer's due process rights violated when the trial court refused to allow presentation of evidence on contemporary standards?

■ Sedelbauer first attacks the evidence adduced at trial as insufficient to support his conviction. The crime for which he was convicted reads as follows:

"Importation, sale, or distribution of obscene materials

Sec. 2. A person who knowingly or intentionally:

(1) sends or brings into Indiana obscene matter for sale or distribution; or

(2) offers to distribute, distributes, or exhibits to another person obscene matter;

commits a Class A misdemeanor...."
IND.CODE § 35–30–10.1–2.

Furthermore, "obscene matter" as described in this statute has been statutorily defined as follows:

"Definitions

Sec. 1. As used in this chapter:

(a) 'Matter' means (i) any book, magazine, newspaper, or other printed or written material; (ii) any picture, drawing, photograph, motion picture, or other pictorial representation; (iii) any statute or other figure; (iv) any recording, transcription, or mechanical, chemical, or electrical reproduction; or (v) any other articles, equipment, machines, or materials.

(b) 'Performance' means any play, motion picture, dance, or other exhibition or presentation, whether pictured, animated, or live, performed before an audience of one (1) or more persons.

(c) A matter or performance is 'obscene' if:

(1) the average person, applying contemporary community standards, finds

that the dominant theme of the matter or performance, taken as a whole, appeals to the prurient interest in sex;

(2) the matter or performance depicts or describes, in a patently offensive way, sexual conduct; and

(3) the matter or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value.

(d) 'Sexual conduct' means (i) sexual intercourse or deviate sexual conduct; (ii) exhibition of the uncovered genitals in the context of masturbation or other sexual activity; (iii) exhibition of the uncovered genitals of a person under sixteen (16) years of age; (iv) sado-masochistic abuse; or (v) sexual intercourse or deviate sexual conduct with an animal.

(e) 'Sado-masochistic abuse' means flagellation or torture by or upon a person as an act of sexual stimulation or gratification.

[f] [Deleted by 1978 amendment].

(g) 'Distribute' means to transfer possession for a consideration.

[h] [Deleted by 1978 amendment].

(i) 'Owner' means any person who owns or has legal right to possession of any matter."

IND.CODE § 35–30–10.1–1.

This statute, and in particular subsection (c), codifies the test for obscenity set forth by the United States Supreme Court in *Miller v. California*, (1973) 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419. It is entitled to every presumption of validity and constitutionality.

■ Sedelbauer specifically challenges whether or not the evidence produced was sufficient to prove beyond a reasonable doubt that he *knowingly* distributed obsence material. The film involved in this case is similar in nature and content to materials found unprotected by the First and Fourteenth Amendments in *Sedelbauer v. State*, (1981) Ind., 428 N.E.2d 206, *cert. denied* 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153.[1] As stated in *Sedelbauer*,

"Appellant next asks the question, 'Is evidence constitutionally sufficient to support a finding of scienter, where the defendant did . not know the nature and character of the contents of the material sold?' This question by the appellant borders on the ludicrous. Any adult human being who could pick up the packages, above described, and sell them to a customer in a store, as above described, would indeed be out of touch with reality if he did not know and understand the nature of the object he was selling." 428 N.E.2d at 210.

As the material presented here is unprotected, and the evidence indicates that Sedelbauer worked in a store where these materials were openly displayed, the evidence is sufficient to establish scienter. *See also, McNeal v. State*, (1982) Ind.App., 434 N.E.2d 127.

■ Sedelbauer next contends that the trial court was without jurisdiction to review this matter. He asserts that the court must first determine whether material is obscene before finding a person guilty of distributing such matter. While courts have traditionally been troubled by retroactive application in obscenity determinations, this argument is unavailing under present law. Material which is obscene has been carefully defined by IND.CODE § 35–30–10.1–1(c), and this definition is modeled on the test set forth by the United States Supreme Court in *Miller v. California, supra*. This test is specific enough to put persons on notice of what material is and is not obscene. This statute satisfies due process requirements and does not operate *ex post facto* in violation of Art. I, § 10 of the United States Constitution. The trial court properly assumed jurisdiction over this case.

■ Next, Sedelbauer contends that the trial court erred in failing to read three tendered instructions. While he takes issue with the court's ruling, Sedelbauer has failed to include these instructions and his objections in the body of his brief. Ind.

1. Same defendant, same crime, different occur- rence.

Rules of Procedure, Appellate Rule 8.3(A)(7) provides:

"When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto. Any error alleged in the motion to correct errors not treated as herein directed shall be deemed waived."

However, for reasons stated in *Davis v. State,* (1976) 265 Ind. 476, 355 N.E.2d 836, this issue must be considered on its merits:

"The State argues that this Court is precluded from considering the merits of appellant's contentions because appellant failed to include in the argument section of his brief a verbatim account of his objections to the refusal of his instruction and to the giving of the court's instructions. It is true that appellant has not complied with Ind.R.Ap.P. 8.3(A)(7) in this respect. This rule was adopted by the Court 'to secure a convenient and uniform mode for presentation of issues to an appellate court,' not to allow one party to avoid the substance of the other's arguments. *Hubbard v. State,* (1974) 262 Ind. 176, 313 N.E.2d 346, 348. We invoke Appellate Rule 8.3 to hold an appellant's specification of error waived only when we find his non-compliance with the rule sufficiently substantial to impede our consideration of the issue raised. In this case we find that the issue of the propriety of this instruction is presented in a manner sufficiently clear to allow us to reach the substance of appellant's contention. We hope that this does not encourage any member of the Bar of this State to ignore Rule 8.3 in the future, for this Court has often applied that rule to hold an issue waived where we have found the non-compliance to be substantial or in bad faith. *Frasier v. State,* (1974) 262 Ind. 59, 312 N.E.2d 77; *Martin v. State,* (1974) 261 Ind. 492, 306 N.E.2d 93; *Bonds v. State,* (1972) 258 Ind. 241, 280 N.E.2d 313."

265 Ind. at 477–478, 355 N.E.2d at 838.

All three refused instructions essentially state the following: "The Court instructs the jury that where a magazine is designed for a deviant group, then prurient appeal must be measured upon its impact on the average adult member of that group."

■ In considering whether any error results from refusal of a tendered instruction, it must be determined:

"(1) whether the tendered instruction correctly states the law, *Gayer v. State,* (1965) 247 Ind. 113, 210 N.E.2d 852; (2) whether there is evidence in the record to support the giving of the instruction, *Wathen v. State,* (1965) 246 Ind. 245, 204 N.E.2d 526; (3) whether the substance of the tendered instruction is covered by other instructions which are given, *Hash v. State,* (1972) 258 Ind. 692, 284 N.E.2d 770; *New v. State,* (1970) 254 Ind. 307, 259 N.E.2d 696; *Cockrum v. State,* (1968) 250 Ind. 366, 234 N.E.2d 479."

265 Ind. at 478, 355 N.E.2d at 838.

■ While Sedelbauer's tendered instructions refer to magazines rather than films, they correctly state that the prurient appeal of material intended for a clearly defined deviant sexual group *may* be measured by its prurient appeal to that particular group. *Mishkin v. New York,* (1966) 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56; *Pinkus v. United States,* (1978) 436 U.S. 293, 98 S.Ct. 1808, 56 L.Ed.2d 293. This instruction therefore correctly states the law and satisfies step one of the *Davis* test.

■ However, as to the second step, the record is devoid of evidence bearing on the film's prurient appeal to male homosexuals. Whenever either the State or defense proffered questions on the film's prurient appeal to male homosexuals, none of the witnesses were allowed to testify. As stated by the trial judge at page 420 of the record,

"I have kept it out every time it was asked, the opinion pertaining to a small group of people [male homosexuals], which you just did, and I've kept it out every time he asked that question."

As there was no evidence adduced at trial in support of Sedelbauer's instructions, they were properly refused. Instead, the trial court instructed the jury on the prurient interest of the film to the average citizen in Allen County, Indiana. These instructions properly state the law under *Miller v. California, supra,* and according to IND.CODE § 35–30–10.1–1(c). A film specifically aimed at the male homosexual community, but which also appeals to the prurient interest of the community at large, must *necessarily* appeal to the prurient interest of the targeted group. No error exists on this issue.

■ Sedelbauer also claims that the trial court erred in allowing Bruce Taylor of the Citizens for Decency through Law to aid in the prosecution of this case. As the State correctly argues, Mr. Taylor was not named special prosecutor but was admitted *pro hac vice* to serve as *co-counsel.* He appeared *with* a deputy prosecuting attorney, and not in place of the State's duly authorized counsel. It has been a long-standing principle in Indiana that courts exercising criminal jurisdiction have the inherent power and duty to appoint attorneys to *assist* in the trial of criminal cases. *State ex rel. Goldsmith v. Hancock Sup. Ct.,* (1979) 270 Ind. 487, 386 N.E.2d 942; *Williams v. State,* (1919) 188 Ind. 283, 123 N.E. 209.

Collateral to Mr. Taylor's appearance, Sedelbauer contends that allowing someone so opposed to pornographic materials to aid in prosecution is highly prejudicial and amounts to a deprivation of due process and equal protection of law. He fails to cite authority in support of this contention, nor does he demonstrate any actual prejudice in this regard. There is no indication that Mr. Taylor represented the State's interest outside of legal boundaries or inconsistent with the State's interest. Therefore, his argument on this issue must fail.

■ Sedelbauer asserts that the trial court was required to grant a mistrial due to a damaged portion of the taped voir dire proceedings. Specifically, the record indicates that during opening statements by the defense, a dispute arose as to a juror's answers to questions during voir dire. Defense counsel claimed that the juror in question answered differently during voir dire than she did during the opening statement. Due to a malfunction in the recording equipment, the court reporter was unable to replay the voir dire proceedings. In spite of his later misgivings as to this particular juror, defense counsel did not challenge during voir dire. On the contrary, he specifically accepted her as part of the panel.

■ It should first be noted that voir dire proceedings are not always recorded for purposes of appeal. *Boone v. State,* (1978) 267 Ind. 493, 371 N.E.2d 708. Furthermore, where defense counsel specifically accepts a jury without timely challenge, he may not later raise an objection based on his own failure to challenge. *Boone, supra; Torrence v. State,* (1971) 255 Ind. 618, 266 N.E.2d 1. Sedelbauer's motion for mistrial was properly denied.

■ Sedelbauer assigns as error the trial court's refusal to allow two witnesses to testify as to contemporary community standards. At trial, Sedelbauer attempted to qualify Charles Dennis as an expert on contemporary community standards in Allen County, Indiana. However, whether materials are obscene can be determined by viewing them, and expert testimony is not necessary. *Pinkus, supra; Hamling v. United States,* (1974) 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590; *Ginzburg v. United States,* (1966) 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31. The trial court properly exercised its discretion in allowing the jury to determine contemporary community standards as an issue of fact.

■ Expert testimony *may* be allowed in order to guide a jury in determining the prurient appeal of material on a specific deviant group. *Pinkus, supra; Mishkin, supra.* Sedelbauer called a sex therapist and male homosexual from Akron, Ohio to testify on this particular issue. The trial court indicated that this witness would not be permitted to testify concerning the prurient appeal of the film "Cruising" on

homosexuals in the Allen County community. While the court properly recognized this witness as an expert on sex, there was no indication that he was qualified to testify on community standards in Allen County. The trial court properly limited this witness's testimony to matters of which he had knowledge.

Finally, Sedelbauer argues that his due process rights were violated by the trial court's failure to allow testimony on contemporary standards of the male homosexual community. While the United States Supreme Court has recognized that expert opinion *may* be used to define contemporary community standards, it has never *required* such in obscenity cases. *Pinkus, supra; Miller, supra; Mishkin, supra.* The record discloses that both the State and the defense were prepared to present expert testimony on this matter in support of their cases. The trial court refused to admit *any* testimony on community standards. Instead, this determination was left to the jury. The jury was properly instructed on prurient interest and community standards and returned a guilty verdict. It becomes apparent that the court properly followed the Indiana obscenity statute as well as the *Miller* obscenity test. This does not amount to a denial of due process.

The judgment of conviction is affirmed.

Affirmed.

STATON, J., concurs.

GARRARD, J., concurs in result.