**Deanna ALBRIGHT, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 4–785A181.**

Court of Appeals of Indiana,
Fourth District.

Dec. 23, 1986.

Richard Kammen, Susan L. Wiant, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., William E. Daily, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Defendant-appellant, Deanna Albright, owner in 1983 of both the Adult News Depot and the Paradise Adult Movieland in Elkhart, Indiana, was convicted by a jury of four counts of selling obscene matter.[1]

---

1. Obscene matter is defined in IND. CODE 35–49–2–1 as follows:

Sec. 1   A matter or performance is obscene for purposes of this article if:

  (1) the average person, applying contemporary community standards, finds that the dominant theme of the matter or performance, taken as a whole, appeals to the prurient interest in sex;

  (2) the matter or performance depicts or describes, in a patently offensive way, sexual conduct; and

The convictions resulted from the purchase of sexually explicit movies and magazines by various law enforcement officials on four different occasions. Albright was given a two year suspended sentence, six months probation and a $10,000 fine ($2,500 for each count). She does not challenge the sufficiency of the evidence to establish that the explicit sexual material was in fact obscene under our statute. However, she raises other errors for our review which are as follows:

I. Whether the court erred in preventing the defense from presenting evidence on community standards through the testimony of an expert witness, Elizabeth Mooney, a certified sex therapist.

II. Whether the court erred in excluding testimony of Tony Marcetti, a video store owner, as to community standards.

III. Whether there was selective prosecution and enforcement against Albright which constituted a violation of the equal protection clauses of the United States and Indiana constitutions.

IV. Whether the State unduly harmed and prejudiced the defendant during final argument by suggesting Albright might open adult bookstores in the neighborhoods of the jury.

V. Whether the Indiana obscenity act is unconstitutional under the United States and the Indiana constitutions.

## Issue I

### Expert Testimony Regarding Community Standards

Albright argues the trial court committed reversible error at trial by preventing expert evidence on community standards through the testimony of witness Elizabeth Mooney, a certified sex therapist.[2] Albright claims the defendant in an obscenity prosecution is entitled to introduce relevant and appropriate expert testimony regarding contemporary community standards and relies on *Kaplan v. California*[3] (1973), 413 U.S. 115, 121, 93 S.Ct. 2680, 2685, 37 L.Ed.2d 492; *Saliba v. State*[4]

---

(3) the matter or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value.

**2.** Before trial, the court granted the State's motion in limine to prevent expert testimony concerning community standards. (See Issue II) The offer of proof at trial of Mooney's testimony in this regard preserved the alleged error. *Nunn v. State* (1983), Ind., 450 N.E.2d 495.

**3.** Chief Justice Burger, writing for the majority in *Kaplan*, stated:

In *Miller v. California* [413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419] the Court today holds that the "'contemporary community standards of the State of California'" as opposed to "national standards," are constitutionally adequate to establish whether a work is obscene. We also reject in *Paris Adult Theatre I v. Slaton* [413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446] any constitutional need for "expert" testimony on behalf of the prosecution, or for any other ancillary evidence of obscenity, once the allegedly obscene material itself is placed in evidence.... *The defense should be free to introduce appropriate expert testimony, see Smith v. California,* 361 U.S. 147, 164–165, 80 S.Ct. 215, 224–225, 4 L.Ed.2d 205 (1959) (Frankfurter, J., concurring), but in "the cases in which this Court has decided

obscenity questions, since *Roth* [354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498], it has regarded the materials as sufficient in themselves for the determination of the question." *Ginzburg v. United States,* 383 U.S. 463, 465, 86 S.Ct. 942, 944, 16 L.Ed.2d 31 (1966). *See United States v. Groner,* 479 F.2d 577, 579–586 (CA5 1973).

413 at 122, 93 S.Ct. at 2684.

**4.** In *Saliba v. State,* Judge Shields stated that the obscene character of materials may be determined by a jury based on a viewing of the allegedly offensive material and *the State* need not present an expert witness or other evidence of community standards to obtain an obscenity conviction.

"However, expert evidence on this issue may be highly relevant. The jurors are not instructed to evaluate obscenity based on their personal opinions but are charged with applying contemporary community standards. *Kaplan v. California,* 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973). In the absence of expert testimony, the jury's determination of contemporary community standards runs the risk of incorporating the individual juror's 'necessarily limited, hit-or-miss subjective view on the basis of his personal up-bringing

(1985), Ind.App., 475 N.E.2d 1181, 1185; and *Smith v. California*[5] (1959), 361 U.S. 147, 164–165, 80 S.Ct. ·215, 224–225, 4 L.Ed.2d 205 (Frankfurter, J. concurring). Further, Albright asserts Mooney's education and experience in counseling approximately 60 persons with sexual dysfunction who live in the community of Elkhart County make her more qualified and knowledgeable about community standards than a juror, and her testimony should have been permitted because it was relevant and would have aided the jury in determining community standards.

Albright argues a proper and sufficient foundation was laid which rendered further testimony regarding community standards admissible. At trial, Albright's counsel made an offer to prove that Mooney would have testified:

"Elkhart County unlike some counties in Michigan or southern Indiana do not have communes, there is a high infidelity rate as a cause of divorce in Elkhart County; there is normal marriage bonding and divorcing in one-parent households in Elkhart County; and the chances are that there are celibate households in Elkhart County—the chances are remote; and that this material could comport to the minimum or the community would accept or tolerate this material in Elkhart County."

The State argues the trial court properly sustained objections to Mooney's testimony as to community standards because: (1) the witness was not qualified to express such

---

or restricted reflection or particular experience of life.' *Smith v. California*, 361 U.S. 147, 165, 80 S.Ct. 215, 225, 4 L.Ed.2d 205 (1959) (Frankfurter, J. concurring). *Consequently, the defendant in an obscenity prosecution is entitled to introduce relevant and appropriate expert testimony on the issue of contemporary community standards. Kaplan v. California*, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492."

(Emphasis added). 475 N.E.2d at 1185.

*But see, Sedelbauer v. State* (1983), Ind.App., 455 N.E.2d 1159, where Judge Hoffman, writing for the Third District, indicates the question of whether or not to admit defendant's evidence regarding the factual issue of contemporary community standards is placed within the trial court's discretion:

"... whether materials are obscene can be determined by viewing them, and expert testimony is not necessary. (citations omitted). The trial court properly exercised its discretion in allowing the jury to determine contemporary community standards as an issue of fact."

455 N.E.2d at 1164.

In this case, the trial court did not follow Judge Hoffman's theory that "expert testimony is not necessary" to determine whether materials are obscene. The trial court allowed evidence on both sides regarding the scientific and educational value of the materials in question. Both the State's expert psychiatrist and the defense's expert sex therapist testified on this issue.

**5.** In his concurring opinion in *Smith v. People*, Justice Frankfurter discussed the right of the defendant in an obscenity prosecution to present evidence on the issue of community standards:

"The uncertainties pertaining to the scope of scienter requisite for an obscenity prosecution and the speculative proof that the issue is likely to entail, are considerations that reinforce the right implicit in the very nature of the legal concept of obscenity—to enlighten the judgment of the tribunal, be it the jury as in this case the judge, regarding the prevailing literary and moral community standards and to do so through qualified experts.... Therefore, to exclude such expert testimony is in effect to exclude as irrelevant evidence that goes to the very essence of the defense and therefore to the constitutional safeguards of due process. The determination of obscenity no doubt rests with judge or jury. Of course the testimony of experts would not displace judge or jury in determining the ultimate question whether the particular book is obscene, any more than the testimony of experts relating to the state of the art in patent suits determines·the patentability of a controverted device.

Since the law through its functionaries is 'applying contemporary community standards' in determining what constitutes obscenity, it surely must be deemed rational, and therefore relevant to the issue of obscenity, to allow light to be shed on what those 'contemporary community standards' are. Their interpretation ought not to depend solely on the necessarily limited, hit-or-miss, subjective view of what they are believed to be by the individual juror or judge. It bears repetition that the determination of obscenity is for juror or judge not on the basis of his personal upbringing or restricted reflection or particular experience of life, but on the basis of 'contemporary community standards.'"

361 U.S. at 164–165, 80 S.Ct. at 224–225.

an opinion; (2) the trial court is not required to admit expert opinion on the issue of community standards; and (3) the expression of expert opinion would have invaded the province of the jury. We agree with the State's *first* contention and find Albright did not establish that Mooney was qualified to express an opinion on the issue of contemporary community standards. Because we affirm the exclusion of Mooney's testimony on this basis, we need not address the question of whether the trial court is required to admit expert opinion offered by the defendant regarding contemporary community standards in an obscenity prosecution.

■ "An expert witness is one who by reason of education or special experience, has knowledge respecting a subject matter about which persons having no particular training are incapable of forming an accurate opinion or making a correct deduction." *Wade v. State* (1986), Ind., 490 N.E.2d 1097. Generally, the competence of a witness to testify as an expert is a matter to be determined by the trial judge and subject to his or her broad discretion. *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896, 901; *Traveler's Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 365. There are two requisites for the admission of expert testimony. First, the subject matter of the testimony must be beyond the understanding of a layman to assess the evidence presented and draw an informed conclusion. Second, the witness must have sufficient skill and knowledge in the field to aid the trier of fact in its search for the truth. *Martin, supra,* 464 N.E.2d at 901. Where a trial court is presented with a witness who has knowledge in and experience with the subject matter before the court and the jury would benefit therefrom, the witness should be permitted to testify as to his opinion, leaving the extent of his knowledge and experience to cross-examination and any contrary evidence

presented by the opponent. *Jones v. State* (1981), Ind., 425 N.E.2d 128. *City of Indianapolis v. Robinson* (1981), Ind.App., 427 N.E.2d 902.

■ Albright clearly established that Mooney is an expert in sexual dysfunction and sex therapy, and the trial court permitted her testimony on the issues of the scientific and educational value to her in her work of both sexually explicit material in general and of the specific films and magazines for which Albright was charged. Mooney's testimony shows she earned a bachelor of arts at Beloit College, a master of science at University of Wisconsin and is currently working toward a doctorate in clinical psychology at the University of Wisconsin. Mooney was a Fulbright Scholar and Ford Foundation grant recipient. She worked for several years as a research associate at Indiana University's Institute for Sex Research, commonly known as the Kinsey Institute. Mooney has been certified[6] and employed as a sex therapist since 1978. She currently resides in South Bend, works as a sex therapist in private practice with Associated Therapy Consultants in PawPaw, Michigan, and is executive director of Planned Parenthood of North Central Indiana with offices in South Bend.

In her testimony, Mooney described a sex therapist as an individual "with special training who attempts to solve the problems people present when they have some difficulty in their lives which they acknowledge to be sexual, in other words, sexual dysfunction." Since entering practice in 1978, Mooney has consulted with approximately 200 patients a year. In the last three years she has counseled about 60 people in Elkhart County with sexual dysfunctions. Mooney stated she might use films and books as a tool in her work. With regard to the exhibits of magazines and films in this case, Mooney testified that she might use them in the treatment of her

---

**6.** Ms. Mooney was certified in 1978 as a sex therapist by the American Association of Sex Educators, Counselors, and Therapists and served for several years on the certifying committee of this Association, which is recognized by the American Psychiatric Association, The American Psychological Association, the American College of Obstetrics and Gynecology, and marriage and family groups throughout the country.

patients.[7] When asked whether she utilized sexually explicit material in her work, she responded, "it's very hard to talk about sex and not become sexually explicit either in film or conversation or in literature."

In *Saliba, supra,* this court held that an opinion poll on the relevant population's views of nudity and sexuality in films is admissible to establish contemporary community standards in an obscenity prosecution if the poll was properly conducted and therefore trustworthy. An opinion poll was viewed as perhaps the best evidence of contemporary community standards of tolerance for sexually explicit material because of its practical advantages. The alternatives to a public poll include presentation of in-court testimony from the entire target population or of a representative sample, which is patently impractical. A third alternative, use of an expert witness to testify as to his or her opinion of community standards, is not as direct or accurate as a public opinion poll.[8] To qualify as an expert in contemporary community standards, the witness must show the professional acceptance and reliability of the basis for his opinion. If this foundation could be demonstrated, then the opinion would be admissible and cross-examination would go to the weight given to the expert's opinion.

In this case, it has not been demonstrated that work with 60 persons from the community with severe sexual problems qualifies the witness to express opinions about the entire community population's attitudes toward sexually explicit material. We agree with Albright that Mooney may, in fact, know much more about human sexual dysfunction than all of the jurors, but human sexual dysfunction is not at issue, and counsel failed to show Mooney has training, education, or experience in identifying contemporary community standards. Mooney may, in fact, be qualified to express her opinion on such standards, but counsel failed to demonstrate the professional acceptance and reliability of the basis for her opinion.

Although Mooney's testimony demonstrates she is familiar with persons experiencing sexual dysfunction and with sexually explicit material used in treatment of such persons, her testimony does not show knowledge of the general community's sexual functioning or with their use or tolerance of sexually explicit material in or outside the home. Nor does her testimony show the basis for forming an opinion as to the general community's attitudes toward sexually explicit material from her skill and knowledge as a therapist. Albright's offer to prove fails to show how *sexual dysfunction* is related to *tolerance of sexually explicit material* or how attitudes of persons with sexual dysfunction towards sexu-

---

7. Regarding one of the films, Mooney stated:
   "I was particularly amused by that film because it is almost an exact replica, maybe not as good in quality but in content, of a scientific film that was done by Gorm Wagner in Sweden and is very frequently used in this country by sex therapists. It's an inhibition-freeing film. I was also amused because a very old technique is used: There's a handprint on the buttocks in that film. It's done with red chalk. The same thing was done in the scientific film. So it is very close to a copy. And again, it is the suggestion of fantasy violence, without actual violence being there. Yes, I would use that film."
   With regard to the scientific value to her as a sex therapist of another film in evidence she stated:
   "I found that probably the most interesting of the films because it has a communication value. It's one of the films that I may even add to the work that I do because it has a 'what-do-you-think-of-this' quality to it that opens people's communications. Frequently, I work with couples where one perceives a sexual problem and the other one in the couple does not perceive it. 'No there's nothing wrong', you know, 'let's not talk about it.' And if I were to use this particular film and say "Okay here's a film I'd like you to watch and let's talk about it when it's over', I probably am going to be able to open up communications between those two people in a way that I could never do—open up that communication by just sitting there and saying to them 'Okay, let's talk about it' when one is denying that there is a problem and won't go any further in the discussion."

8. These alternatives are not exclusive. Creative counsel may identify other methods of showing contemporary community standards. See the aborted attempt, discussed later in this opinion, by counsel here to introduce, by hearsay, viewing habits of video store patrons.

ally explicit materials are related to the general community's attitudes toward sexually explicit material.[9]

We find no error in the trial court's refusal to permit Mooney to testify as to contemporary community standards.

## Issue II
*Testimony of video store owner*

■ After the State's rebuttal testimony defense counsel made an offer to prove purported testimony of one Tony Marsetti, a video store owner, who was subpoened by Albright but failed to appear. Counsel orally informed the court that in light of the court's granting the State's pre-trial motion in limine, Mr. Marsetti's testimony was excluded and his appearance in court would be futile. He proceeded to make his offer to prove, presumably to preserve error. He stated Marsetti, if present, would testify (1) he was the owner of Cramar, Inc. doing business as Video Movie Center, with its principal corporate office in Elkhart; (2) he had two other outlets in Elkhart County and one in Mishawauka, Indiana; (3) video cassettes were rented by members of his video clubs; (4) his current inventory list of titles offered to members of video clubs included x-rated movies which depicted oral sex, anal sex, sex showing intercourse, sex between men and sex between women, and (5) one-tenth of the thousands of cassettes rented were x-rated.

The State objected because the witness was not in court, proper mileage was not tendered to the witness, and the exhibit (the inventory of video cassettes) which was offered was hearsay. The State also claimed the titles to the movies would not indicate their actual content and were

therefore not shown to be relevant and material.

First of all, we observe the defendant's representation to the trial court that Marsetti's testimony was excluded by the court's ruling on the State's motion in limine was incorrect.

The State's motion, omitting formal parts, read as follows:

### MOTION IN LIMINE

Comes now the State of Indiana by Terry C. Shewmaker, Deputy Prosecuting Attorney, in and for the 34th Judicial Circuit and respectfully moves this Court to Prohibit, Restrict, Deny and Prevent the Defendant, his counsel or any witnesses called by the Defendant from *giving any expert testimony* in the presence of the Jury as to community standards in Elkhart County, Indiana, for the reason that said evidence would usurp the function of the Jury for the reason that said issue is an issue of fact for determination by the Jury.

WHEREFORE: The State of Indiana respectfully moves this Court to Deny, Prohibit, Restrict and Prevent the Defendant from making mention of any of the aforesaid evidence in the presence of the Jury *in the form of expert testimony* on the issue of obscenity for the reason that said evidence is inadmissible and not a proper subject to be presented to the Jury trying the subject cause of action. WHEREFORE: The State of Indiana respectfully urges this Court to grant its Motion in Limine and for all other relief proper in the premises." [10]

---

9. In her offer to prove, Mooney mentions the lack of communes, the high infidelity rate as a cause of divorce, normal marriage bonding, one parent households and the absence of celibate households in the community. However, counsel failed to establish *how* Mooney's knowledge of the existence or absence of the above characteristics of the community coupled with her knowledge of sexual dysfunction gives her the ability to express an opinion on tolerance of explicit material.

10. It is highly questionable whether the admissibility of an expert's opinion as to community standards was a proper subject for a motion in limine. The purpose of a motion in limine made before or during a trial is to prevent the jury from hearing highly prejudicial matters in the form of questions, answers, or statements. Proper motions in limine are designed to exclude prejudicial matters, not matters that are merely irrelevant or immaterial. *Austin v. State* (1981), Ind.App., 425 N.E.2d 736. *Indiana &*

(Emphasis added.)

Marsetti's testimony, as revealed by the alleged offer to prove, contained no opinions on community standards. The offer revealed Marsetti owned video stores in the community and among the films he rented was a certain percentage of adult, x-rated films. These were facts, not opinions.

Pertinent to this opinion, however, is the fact that Albright's "offer to prove" was not an offer to prove at all. It lacked one material element—the witness. Simply stated, an offer to prove is a device utilized when an objection to a question or line of questions is sustained during the direct examination of *a witness.*

At that point "the examiner must make an 'offer to prove,' also known as an 'offer of proof,' to preserve the ruling for appellate review. The offer to prove is the method by which counsel places before the trial court (and ultimately the reviewing court) the evidence he or she wishes to present, to allow the court to determine the relevancy and admissibility of the proposed testimony.... an offer to prove assists the appellate evaluation of prejudice to the proponent of the excluded evidence." Miller, Evidence § 103.110, and authority cited therein.

Our Ind. Rules of Trial Procedure, Trial Rule 43(C) provides:

"In an action tried by a jury, if an objection to a question *propounded to a witness* is sustained by the court, the examining attorney may make a specific offer of what he expects to prove by the answer of the witness."

Here, when Marsetti failed to appear as a witness, the attempt by counsel to submit as evidence his testimony for the truth of the matters contained therein was properly disregarded by the court. It was hearsay and clearly not admissible.

*Michigan Electric Co. v. Pounds* (1981), Ind. App., 426 N.E.2d 45, *reh. denied,* 428 N.E.2d 108.
Here, the State's motion does not allege it would be prejudicial to the State for Albright merely to ask her expert witnesses if they had

*Issue III*

*Alleged Selective Prosecution*

■ Albright claims that selective prosecution and/or enforcement occurred in this case. She acknowledges, citing federal authority, that to establish a *prima facie* case of prosecutorial bad faith, a defendant must present facts sufficient to raise a reasonable doubt that was the prosecutor's purpose. *United States v. Falk,* 479 F.2d 616, (7th Cir.1973); *United States v. Peskin,* 527 F.2d 71, (7th Cir.1975), *cert. denied,* 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79. Further, she acknowledges that it must be shown that "the decision to prosecute was based on impermissible considerations such as race, religion or the desire to penalize the exercise of constitutional rights." *Peskin, supra,* at 86. We quote her remaining argument:

"The Appellant further submits that the prosecutor is violating the equal protection right guaranteed to Appellant by the Fourteenth Amendment of the United States Constitution and by Article I, Section 23 of the Indiana Constitution. According to *Peskin,* selective prosecution occurs if the prosecution is based on the desire to penalize the exercise of constitutional rights. This has occurred in the present case. The Appellant's First Amendment right to freedom of speech is being violated by such a prosecution. Again other establishments, such as video movie clubs are not being prosecuted and are being allowed to exercise their right to freedom of speech by renting or selling X-rated movies. Therefore, prosecution of the Appellant for similar conduct is prejudicial and meets the requirements for establishing the defense of selective prosecution."

Appellant's brief, page 25–26.

We turn to Indiana authority on this issue. In *Highland Sales Corp. v. Vance* (1962), 244 Ind. 20, 186 N.E.2d 682, the

an opinion and what it was. It is difficult to understand how the State would have been prejudiced if the court had sustained an objection to opinion testimony. In that case, the jury would have been unaware of the answer.

supreme court heard an action by a department store and its employees who sought to enjoin the enforcement of a law which prohibited the operation of the store on Sundays. The claim was made that the store and its employees were denied equal protection since other businesses such as drug stores, gasoline stations, and restaurants were allowed to operate on Sundays. Our supreme court concluded that the failure to prosecute some parties who violate the law does not excuse violations by others, nor did it bar their prosecution. The court stated at 186 N.E.2d 689:

"We do not minimize the duty of the prosecuting attorney to exercise the power of his office fairly and in good faith. However, in order to warrant judicial interference with the office of the prosecuting attorney because of either nonfeasance of malfeasance, it must be made to appear from the facts alleged that such misconduct consists of a gross and intentional failure or refusal to enforce the law in some major area or that such misconduct is actually the product of bad faith or evil design."

The court held there were no facts which established the law was being enforced against the appellants "with an evil eye or an unequal hand" or with personal animosity or for some other illegitimate reason. It observed that the other establishments were not like businesses but might be considered as works of necessity and recreation within the purview of the then existing Sunday law.

Again, in the case of *Lee v. State* (1979), Ind.App., 397 N.E.2d 1047, the defendants, who were charged with professional gambling in the back of a tavern, claimed they were denied equal protection because religious, social and veteran's organizations were allowed to conduct gambling operations without prosecution. Judge Neal, in addressing this issue, followed the rule set out in *Highland* and concluded "in light of the heavy caseload facing a prosecuting attorney, it is clear that the failure to prosecute charitable organizations in no way establishes that the defendants were denied equal protection. The State showed

that there was a reasonable basis for the way the gambling laws were enforced." 397 N.E.2d at 1049.

More recently, in *Love v. State* (1984), Ind., 468 N.E.2d 519, defendant Love participated in a riot at the Indiana State Prison in Michigan City and took seven hostages. Following an investigation, Love and five other black inmates were charged with kidnapping. The investigation disclosed that white inmates were participants in the altercation and Love claimed discrimination in that only the black prisoners were charged. Our supreme court acknowledged that it would be "a denial of equal protection for state authorities to establish a policy that only blacks would be prosecuted for particular crimes and that whites would be granted immunity." *Id.* at 521. However, the court could find nothing in the transcript indicating that the charges were filed or not filed against inmates based on their race. "All indications are that the report made to the prosecuting attorney, upon which he based the charges, did not even state the race of the participants. The decision to charge was entirely that of the prosecuting attorney who based his decision upon the degree of participation and the conduct and attitude of the various prisoners during the uprising." *Id.* at 520, 521.

In the *Love* case, the issue was raised by a motion to dismiss. The trial court afforded Love a full and exhaustive evidentiary hearing in the absence of the jury to determine whether or not he had been denied equal protection. However, he claimed the court erred by preventing him from presenting any evidence to the jury in support of his defense of selective prosecution. He also claimed that the court erred in refusing to give his tendered instruction of the defense. Our supreme court rejected these arguments adopting the following language of professors LaFave and Israel (2 *W. LaFave & J. Israel*, Criminal Procedure § 13.4(a) at 187:

"Although some authority is to be found that a discriminatory prosecution claim is a 'defense' which is to be raised during

the course of the trial and sent to the jury as part of the case just as with, say, a defense of self-defense, this is not a sound procedure. Because the 'question of discriminatory prosecution relates not to the guilt or innocence of [the accused], but rather addresses itself to a constitutional defect in the institution of the prosecution,' the claim 'should be treated as an application to the court for a dismissal or quashing of the prosecution' and thus should be decided by the court. Moreover, 'because a claim of discriminatory prosecution generally rests upon evidence completely extraneous to the specific facts of the charged offense,' the better practice is to require the claim to be raised and resolved in a pretrial setting. (Citations omitted.) 2 *W. LaFave & J. Israel, supra,* § 13.4(a) at 187." *Love v. State, supra* at 521–22.

With this law of our jurisdiction in mind, we now address Albright's claim. First, we acknowledge that selective prosecution may be a basis for dismissal in a criminal action. The matter should be brought to the attention of the court by written motion which, on its face, reveals a basis for such claim. A hearing must be set outside the presence of the jury at which both the defendant and the prosecuting attorney are given the opportunity to present evidence. The findings of the court, either granting the motion to dismiss or denying said motion, are then properly subject to appellate review.

Here, no such proceedings were held. We find no motion to dismiss on the basis of selective prosecution in this record. In her argument, Albright claims—without reference to supporting evidence in the record—that "other establishments, such as video movie clubs are not being prosecuted and are being allowed to exercise their right to freedom of speech by renting or selling X-rated movies. Therefore, prosecution of the Appellant for similar conduct is prejudicial and meets the requirements for establishing the defense of selective prosecution." Appellant's brief, p. 26.

Apparently Albright is relying on Marsetti's alleged "offer to prove" as the basis for her selective prosecution claim. As noted earlier, such information was not evidence before the trial court. Nor, in any event, would we consider such evidence without giving the prosecutor an opportunity to respond.

The procedure for asserting and establishing selective prosecution in a criminal case was not followed by Albright and, therefore, her claim of being unfairly charged is without merit.

### Issue IV
### Final Argument Prejudicial

■ The record indicates the deputy prosecutor, during his closing argument, stated to the jury:

"She may open another store in your neighborhood and you may have your children to contend with. You may have people in your neighborhood that you don't want in your neighborhood patronizing these stores." (R.P. 557).

Albright argues these comments violated the settled rule that the prosecutor's comments throughout trial must be restricted by law to the evidence and must not be based on implied or personal knowledge. Albright claims these remarks were calculated to inflame the passions of the jury and obtain a verdict of guilty not upon the evidence but rather upon emotion alone. Albright points out that no evidence was presented nor issues raised at trial regarding the possibility Albright would open additional stores or that any possible new stores would be located in juror's neighborhoods.

The State contends these remarks were made in response to the defense attorney's closing argument in which he informed the jury that an acquittal would send "a message to the State of Indiana to leave sexually explicit material alone because a democratic society can tolerate this material." In addition, the State argues Albright has failed to preserve this error on review because she did not object to the statement of the prosecutor at the time it was made and

failed to request that the jury be admonished.

We find Albright has failed to preserve error on review. The record discloses that no motion for a mistrial, admonition to the jury or other objection to the remark was made by Albright. Consequently, Albright has failed to preserve error upon this issue. *Bayes v. State* (1984), Ind., 466 N.E.2d 447. *See also, Johnson v. State* (1982), Ind., 436 N.E.2d 796; *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843 (criteria for determining prosecutorial misconduct).

### Issue V

*The Constitutionality of the Indiana Obscenity Act*

Finally, Albright claims that our supreme court in *Sedelbauer v. State* (1981), Ind., 428 N.E.2d 206, *cert. denied*, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153, interpreted our obscenity statute in a manner inconsistent with the First Amendment. She then argues that the judicial system must strike down the statute because that same judicial system has improperly applied the statute.

The supreme court case of *Sedelbauer* did not address the constitutionality of our statute. The primary issue in that case was whether the trial court erred in giving an instruction on pandering. There was no attempt by the court to modify the constitutional and statutory definition of obscenity. The court merely applied the statutory definition to the evidence.

In any event, our obscenity statute fully complies with the constitutional guidelines set out by the Supreme Court in *Miller v. California* (1973), 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419. This was recognized in *Sedelbauer v. State* (1983), Ind.App., 455 N.E.2d 1159. Thus, according to established authority, our statute does not violate the First Amendment. Other than her First Amendment attack, Albright advances no other arguments to suggest that our statute is defective. She has presented no basis for reversal.

The judgment is affirmed.

CONOVER, P.J., concurs.

YOUNG, J., dissents without opinion.