74 Cal.Rptr.3d 842 (2008)
161 Cal.App.4th 1140
COUNTY OF SANTA CLARA et al., Petitioners,
v.
The SUPERIOR COURT of Santa Clara County, Respondent; Atlantic Richfield Company et al., Real Parties in Interest.
No. H031540.
Court of Appeal of California, Sixth District.
April 8, 2008.
*843 Ann Miller Ravel, County Counsel, Cheryl A. Stevens, Deputy County Counsel, Aryn P. Harris, Deputy County Counsel, Office of the Santa Clara County Counsel, Dennis J. Herrera, City Attorney, Owen J. Clements, Chief of Special Litigation, Erin Bernstein, Deputy City Attorney, Office of the San Francisco City Attorney, Michael J. Aguirre, City Attorney, Sim von Kalinowski, Chief Deputy City Attorney, Office of the San Diego City Attorney, Richard E. Winnie, County Counsel, Raymond L. MacKay, Deputy County Counsel, Office of the Alameda County Counsel, Dennis Bunting, County Counsel, Office of the Solano County Counsel, Thomas F. Casey III, County Counsel, Brenda Carlson, Redwood City, Rebecca M. Archer, Office of the San Mateo County Counsel, Raymond G. Fortner, Jr., County Counsel, Donovon M. Main, Deputy County Counsel, Robert E. Ragland, Deputy County Counsel, Office of the Los Angeles County Counsel, Jeffrey B. Issacs, Patricia Bilgin, Elise Ruden, Los Angeles, Office of the City Attorney, City of Los Angeles, John A. Russo, Oakland, Christopher Kee, Office of the Oakland City Attorney, Charles J. McKee, County Counsel, William M. Litt, Deputy County Counsel, Office of the Monterey County Counsel, Frank M. Pitre, Nancy L. Fineman, Ara Jabagchourian, Douglas Y. Park, Burlingame, Cotchett, Pitre & McCarthy, Michael P. Thornton, Neil T. Leifer, Thornton & Naumes, Fidelma Fitzpatrick, Aileen Sprague, Motley Rice LLC, Mary Alexander, Jennifer L. Fiore, San Francisco, Mary Alexander & Associates, for Petitioners County of Santa Clara, et al.
Sean Morris, Los Angeles, Shane W. Tsend, John R. Lawless, Kristen L. Roberts, Los Angeles, Philip H. Curtis, William H. Voth, Arnold & Porter LLP, for Real Party in Interest Atlantic Richfield Company.
Richard W. Mark, Elyse D. Echtman, Orrick, Herrington & Sutcliffe LLP, Peter A. Strotz, Daniel J. Nichols, Oakland, Filice Brown Eassa & McLeod LLP, for Real Party in Interest American Cyanamid Company.
Lawrence A. Wengel, Bradley W. Kragel, Sacramento, Greve, Clifford, Wengel & Paras, LLP, Allen J. Ruby, Glen W. Schofield, San Jose, Ruby & Schofield, James P. Fitzgerald, James J. Frost, McGrath, North, Mullin & Kratz, P.C., for Real Party in Interest ConAgra Grocery Products Company.
Steven R. Williams, Visalia, Collin J. Hite, McGuire Woods LLP, Clement L. Glynn, Patricia L. Bonheyo, Walnut Creek, Glynn & Finley, LLP, for Real Party in Interest E.I. du Pont de Nemours and Company.
Michael T. Nilan, Halleland, Lewis, Nilan & Johnson, P.A., James C. Hyde, San Jose, Ropers, Majeski, Kohn & Bentley, for Real Party in Interest Millennium Holdings LLP.
Paul F. Markoff, Crowley, Barrett & Karaba, LTD, Archie S. Robinson, San Jose, Robinson & Wood, Inc., for Real Party in Interest The O'Brien Corporation.
James H. McManis, William W. Faulkner, Matthew Schechter, San Jose, McManis, Faulkner & Morgan, Donald T. *844 Scott, Bartlit, Beck, Herman, Palenchar & Scott, Timothy Hardy, Esq., for Real Party in Interest NL Industries, Inc.
Charles H. Moellenberg, Jr., Paul Pohl, Jones Day, John W. Edwards, Palo Alto, Jones Day, Brian J. O'Neill, Los Angeles, Jones Day, for Real Party in Interest The Sherwin-Williams Company.
Jennifer B. Henning, for Amicus Curiae California State Association of Counties on behalf of Petitioners County of Santa Clara, et al.
Victor M. Sher, San Francisco, Sher Leff LLP, for Amicus Curiae Association of California Water Agencies on behalf of Petitioners County of Santa Clara, et al.
Arthur H. Bryant, Victoria W. Ni, Oakland, Public Justice, P.C., for Amicus Curiae Public Justice, P.S., Healthy Children Organizing Project and Western Center For Law and Poverty on behalf of Petitioners County of Santa Clara, et al.
Kevin Underhill, San Francisco, Shook, Hardy & Bacon, LLP, for Amicus Curiae Chamber of Commerce of the United States of America and the American Tort Reform Association on behalf of Real Party in Interest Atlantic Richfield Company.
Fred J. Hiestand, Sacramento, for Amicus Curiae The Civil Justice Association of California on behalf of Real Party in Interest Atlantic Richfield Company.
Richard O. Faulk, John S. Gray, Gardere Wynne Sewell LLP, Jay Smith, Los Angeles, Steptoe & Johnson LLP, for Amicus Curiae The American Chemistry Council on behalf of Real Parties in Interest.
MIHARA, J.
A group of public entities are prosecuting a representative public nuisance action against a group of companies that manufactured lead paint. This action seeks abatement as the sole remedy, and it has not yet proceeded to trial. The companies filed a motion seeking to bar the public entities from compensating their private counsel by means of contingent fees. The superior court, relying on People ex tel. Clancy v. Superior Court (1985) 39 Cal.3d 740, 218 Cal.Rptr. 24, 705 P.2d 347 (Clancy), issued an order barring the public entities from compensating their private counsel by means of any contingent fee agreement. The public entities seek writ relief from the superior court's order. They assert that Clancy does not bar all contingent fee agreements in public nuisance abatement actions, and that their contingent fee agreements are valid. We conclude that Clancy does not bar the public entities' contingent fee agreements with their private counsel, and we issue a writ of mandate directing the superior court to vacate its order and issue a new order denying the companies' motion.

I. Background
The public entities' action against the companies originally included causes of action for fraud, strict liability, negligence, unfair business practices, and public nuisance.[1] (County of Santa Clara v. Atlantic Richfield Co. (2006) 137 Cal.App.4th 292, 300, 40 Cal.Rptr.3d 313 (Santa Clara I).) In March 2006, this court reversed the superior court's judgment of dismissal and ordered the superior court to reinstate the representative public nuisance cause of *845 action and the negligence, strict liability, and fraud causes of action. (Santa Clara I, at p. 333, 40 Cal.Rptr.3d 313.) In January 2007, the public entities filed a motion seeking leave to file a proposed fourth amended complaint that alleged a single representative public nuisance cause of action and sought only abatement. Throughout this litigation, the public entities have been represented by both their in-house counsel and private counsel.
In February 2007, the companies filed a "motion to bar payment of contingent fees to private attorneys." They asserted that "the government cannot retain a private attorney on a contingent fee basis to litigate a public nuisance claim." The companies sought "an order that precludes plaintiffs from retaining outside counsel under any agreement in which payment of fees and costs is contingent on the outcome of the litigation."
The companies attached to their motion a number of fee agreements between the public entities and their private counsel, and the public entities filed opposition to which they attached their fee agreements and declarations from their in-house and private counsel. The fee agreements and declarations disclose that the public entities and private counsel agreed that, other than $150,000 that would be forwarded by Santa Clara toward costs, private counsel would pay all further costs and would not receive any fees unless the action was successful. If the action succeeded, private counsel could seek a court award of costs and would be entitled to recover any unrecompensed costs from the "recovery" and a fee of 17% of the "net recovery."
The fee agreements provide different definitions of "recovery." Some of the agreements define "recovery" as "moneys other than civil penalties," while others define "recovery" as the "amount recovered, by way of judgment, settlement, or other resolution." Some of the agreements include "both monetary and nonmonetary" in their definitions of "recovery." The San Diego agreement defines "net recovery" as "the payment of money, stock, and/or in the value of the abatement remedy after the deduction of the costs paid or to be paid." The Santa Clara fee agreement provides that, "[i]n the event that the Litigation is resolved by settlement under terms involving the provision of goods, services or any other `in-kind' payment, the Santa Clara County Counsel agrees to seek, as part of any such settlement, a mutually agreeable monetary settlement of attorneys' fees and expenses."
In April 2007, the superior court heard both the companies' motion "to bar payment" and the public entities' motion for leave to file the fourth amended complaint. The court granted the public entities' motion for leave to file the fourth amended complaint and ordered that the pleading be filed within 30 days.
Although there were some preliminary issues about the "ripe[ness]" of the companies' motion, the superior court resolved the motion on its merits.[2] The *846 court rejected the public entities' claim that Clancy was distinguishable. The court concluded that, under Clancy, "outside counsel must be precluded from operating under a contingent fee agreement, regardless of the government attorneys' and outside attorneys' well-meaning intentions to have all decisions in this litigation made by the government attorneys." The court granted the companies' motion and "preclud[ed] Plaintiffs from retaining outside counsel under any agreement in which the payment of fees and costs is contingent on the outcome of the litigation ...." The court allowed the public entities "30 days to file with the court new fee agreements" or "declarations detailing the fee arrangements with outside counsel."
The public entities sought a writ of mandate in this court, and the superior court stayed the matter pending resolution of this writ proceeding. This court issued an order to show cause on the writ petition, the companies filed a return, and the public entities filed a reply.[3]

II. DISCUSSION
The public entities claim that the superior court erred in categorically precluding contingent fee agreements. They maintain that Clancy does not categorically bar the retention of private counsel to represent a public entity in a public nuisance abatement action under a contingent fee agreement. The public entities contend that their engagement of private counsel under contingent fee agreements in this action falls outside the scope of Clancy's holding.

A. Propriety of Writ Review
In this case, the companies, for whatever reason, did not style their motion as a motion to disqualify the public entities' private counsel.[4] While an order disqualifying counsel is an appealable order (Chronometrics, Inc. v. Sysgen, Inc. (1980) 110 Cal.App.3d 597, 599, fn. 1, 168 Cal. Rptr. 196), the order issued by the superior court granting the companies' motion was not appealable because it did not explicitly disqualify the public entities' private counsel. Instead, it precluded the public entities from employing their private counsel under any contingent fee arrangements.
"It would be naive not to recognize that the motion to disqualify opposing counsel is frequently a tactical device to delay litigation." (Comden v. Superior Court (1978) 20 Cal.3d 906, 915, 145 Cal.Rptr. 9, 576 P.2d 971.) In this case, the companies' motion threatened not only to deprive the public entities of their choice of counsel but also to preclude them from pursuing any appellate remedies. Writ review of this order is appropriate because appellate review is unavailable, and any error in the order would result in unjustifiably depriving the public entities of their right to counsel of choice.

*847 B. Clancy

We begin with Clancy, since Clancy was the basis for the superior court's ruling. In Clancy, the City of Corona (Corona) had hired James Clancy, a private attorney, to bring nuisance abatement actions against businesses selling obscene publications in violation of a city ordinance. (Clancy, supra, 39 Cal.3d at p. 743, 218 Cal.Rptr. 24, 705 P.2d 347.) The employment contract between Corona and Clancy, who was an independent contractor rather than an employee, provided that Clancy was to be paid $60 per hour for his work in bringing public nuisance actions, but he would be paid only $30 per hour for his work in any public nuisance action in which Corona did not prevail or in which Corona prevailed but did not recover its attorney's fees. (Clancy, at pp. 745, 747, 218 Cal.Rptr. 24, 705 P.2d 347.)
Clancy, acting as a "special" City Attorney, filed a public nuisance complaint against a bookstore and its operator seeking abatement, a declaratory judgment and an injunction. (Clancy, supra, 39 Cal.3d at p. 744, 218 Cal.Rptr. 24, 705 P.2d 347.) The bookstore operator unsuccessfully sought to disqualify Clancy as attorney for Corona. (Ibid.) The bookstore operator then sought writ relief, contending that it was "improper for an attorney representing the government to have a financial stake in the outcome of an action to abate a public nuisance" and asserting that "a government attorney prosecuting such actions must be neutral, as must an attorney prosecuting a criminal case." (Clancy, at p. 745, 218 Cal.Rptr. 24, 705 P.2d 347.)
The California Supreme Court recognized that "there is a class of civil actions that demands the representative of the government to be absolutely neutral. This requirement precludes the use in such cases of a contingent fee arrangement." (Clancy, supra, 39 Cal.3d at p. 748, 218 Cal.Rptr. 24, 705 P.2d 347.) "[A] lawyer cannot escape the heightened ethical requirements of one who performs governmental functions merely by declaring he is not a public official. The responsibility follows the job: if Clancy is performing tasks on behalf of and in the name of the government to which greater standards of neutrality apply, he must adhere to those standards." (Clancy, at p. 747, 218 Cal. Rptr. 24, 705 P.2d 347.)
The first question was whether a public nuisance abatement action fell within the class of civil cases in which the government's representative must be absolutely neutral. The court noted that ordinary civil cases brought by the government do not fall within this class of cases, and therefore contingent fee arrangements in ordinary civil cases are permitted.[5] (Clancy, supra, 39 Cal.3d at p. 748, 218 Cal. Rptr. 24, 705 P.2d 347.) However, public nuisance abatement actions differ from ordinary civil actions brought by the government. "[T]he abatement of a public nuisance involves a balancing of interests. On the one hand is the interest of the people in ridding their city of an obnoxious or dangerous condition; on the other hand is the interest of the landowner in using his property as he wishes. And when an establishment such as an adult bookstore is the subject of the abatement action, something more is added to the balance: not only does the landowner have a First Amendment interest in selling protected material, but the public has a First Amendment interest in having such material *848 available for purchase. Thus, as with an eminent domain action [to which the absolute neutrality requirement applies], the abatement of a public nuisance involves a delicate weighing of values. Any financial arrangement that would tempt the government attorney to tip the scale cannot be tolerated." (Clancy, at p. 749, 218 Cal.Rptr. 24, 705 P.2d 347.) Since public nuisance abatement actions generally involve "a delicate weighing of values" and "balancing of interests," such actions fall within the class of civil cases in which the government's representative must be absolutely neutral.
The next question was whether the need for the government's representative in a public nuisance abatement action to be absolutely neutral precluded Clancy from prosecuting Corona's public nuisance abatement action against the bookstore operator under the contingent fee arrangement. The court concluded that this contingent fee arrangement precluded Clancy from being absolutely neutral. "Clancy has an interest in the result of the case: his hourly rate will double if the City is successful in the litigation. Obviously this arrangement gives him an interest extraneous to his official function in the actions he prosecutes on behalf of the City." (Clancy, supra, 39 Cal.3d at pp. 747-748, 218 Cal.Rptr. 24, 705 P.2d 347.) "[W]e hold that the contingent fee arrangement between the City and Clancy is antithetical to the standard of neutrality that an attorney representing the government must meet when prosecuting a public nuisance abatement action. In the interests of justice, therefore, we must order Clancy disqualified from representing the City in the pending abatement action." (Clancy, at p. 750, 218 Cal.Rptr. 24, 705 P.2d 347.) The court expressly noted that Corona was not precluded from rehiring Clancy to represent it on other terms. (Clancy, at p. 750, fn. 5, 218 Cal.Rptr. 24, 705 P.2d 347.)

C. Application of Clancy

As in Clancy, the public entities in this case have engaged the services of private counsel pursuant to contingent fee agreements under which private counsel will participate in representing the interests of the public entities in a public nuisance abatement action. The public entities argue that Clancy's absolute neutrality requirement does not apply here because private counsel have not been engaged as the sole representatives of the public entities, as James Clancy was in Clancy, but only to assist the government attorneys who are prosecuting this action on behalf of the public entities. Unlike James Clancy, private counsel do not have decision-making authority and the power to control the litigation, both of which have been retained by the public entities' in-house counsel. The public entities claim that the limited and subordinate role of private counsel does not justify applying the absolute neutrality requirement to them.
It is undisputed that private counsel have been engaged to play a limited, subordinate role in this litigation. All of the public entities are represented by in-house counsel in addition to their private counsel. The fee agreements between five of the public entities and their private counsel explicitly provide that the public entities' in-house counsel "retain final authority over all aspects of the Litigation."[6] Their private counsel submitted declarations confirming *849 that the public entities' in-house counsel retain "complete control" of the litigation.[7] The two remaining fee agreements, those of Oakland and Solano, purport to grant private counsel "absolute discretion in the decision of who to sue and who not to sue, if anyone, and what theories to plead and what evidence to present." However, Oakland has disclaimed this fee agreement and asserts that it has retained "complete control" of this litigation and is revising its fee agreement to so reflect.[8] Solano's private counsel asserts that Solano's in-house counsel has "maintained and continue[s] to maintain complete control over all aspects of the litigation" and "all decision making authority and responsibility." The record before us does not contain any fee agreements between the remaining three public entity petitioners and any private counsel.[9]
The public entities have therefore established that their private counsel serve in a subordinate role in which private counsel merely assist in-house counsel and lack any authority to control the litigation. The only remaining question is whether the limited role of private counsel renders inapplicable Clancy's absolute neutrality requirement. While Clancy contains language suggesting that it is establishing a broad rule banning contingent fee agreements with private counsel in public nuisance abatement actions, we are bound by only the holding in Clancy, not all of its language.
"We acknowledge, as we must, that we are bound to follow binding precedent *850 of a higher court, and that the refusal to do so is in excess of our own jurisdiction. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455-456 [20 Cal.Rptr. 321, 369 P.2d 937].) However, we are not bound by dicta.... In every case, it is necessary to read the language of an opinion in the light of its facts and the issues raised, in order to determine which statements of law were necessary to the decision, and therefore binding precedent, and which were general observations unnecessary to the decision. The latter are dicta, with no force as precedent." (Fireman's Fund Ins. Co. v. Maryland Casualty Co. (1998) 65 Cal.App.4th 1279, 1300-1301, 77 Cal.Rptr.2d 296.)
"It is a foundational principle that: `"[T]he language of an opinion must be construed with reference to the facts presented by the case, and the positive authority of a decision is coextensive only with such facts."' [Citations.] `A litigant cannot find shelter under a rule announced in a decision that is inapplicable to a different factual situation in his own case, nor may a decision of a court be rested on quotations from previous opinions that are not pertinent by reason of dissimilarity of facts in the cited cases and in those in the case under consideration.'" (Harris v. Capital Growth Investors XIV (1991) 52 Cal.3d 1142, 1157, 278 Cal.Rptr. 614, 805 P.2d 873.)
The California Supreme Court's holding in Clancy must be construed with reference to the facts presented in Clancy, and the binding authority of Clancy is limited to the facts upon which the California Supreme Court rested its holding. James Clancy was serving as Corona's sole representative in its public nuisance abatement action and had complete control over the litigation. Clancy's holding was based on the rationale that, where private counsel are "performing tasks on behalf of and in the name of the government" in a public nuisance abatement action in which there must be a "balancing of interests," private counsel must be absolutely neutral and cannot be compensated by a contingent fee arrangement, because private counsel's financial interest might "tip the scale" on which these interests are balanced. (Clancy, supra, 39 Cal.3d at pp. 747, 748, 749, 218 Cal.Rptr. 24, 705 P.2d 347.)
In contrast, where private counsel are merely assisting government attorneys in the litigation of a public nuisance abatement action and are explicitly serving in a subordinate role, in which private counsel lack any decision-making authority or control, private counsel are not themselves acting "in the name of the government" and have no role in the "balancing of interests" that triggers the absolute neutrality requirement. Private counsel serving in such a subordinate role do not supplant the public entities' in-house attorneys, who must be absolutely neutral, and are not in a position where their interest in maximizing their contingent fee can influence the balancing of interests or any of the other decisions that are made exclusively by the public entities' in-house attorneys. Because Clancy's holding is limited to the facts that were before the California Supreme Court in Clancy, a private attorney serving as the sole representative of the government in a public nuisance abatement action and completely controlling the litigation, Clancy does not justify the superior court's order barring the public entities from compensating, by means of a contingent fee agreement, their private counsel, who are merely assisting in-house counsel and lack any control over the litigation.[10]

*851 D. Other Cases
Since Clancy does not support the superior court's order, we must consider whether any other authority does.
None of the other cases cited by the companies provides any support for the superior court's order. In Tumey v. State of Ohio (1927) 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (Tumey), Tumey was arrested for unlawful possession of alcohol and tried by the mayor of the village, who had the power to ascertain guilt and set the amount of the fine. The mayor would be paid $12 out of the fine if Tumey was convicted, but would receive no funds if Tumey was not convicted. (Tumey, at pp. 520, 523, 533; 47 S.Ct. 437.) The United States Supreme Court concluded that it was a violation of due process for the mayor to adjudge Tumey's culpability because the mayor had a pecuniary interest in the outcome. "That officers acting in a judicial or quasi judicial capacity are disqualified by their interest in the controversy to be decided is of course the general rule." (Tumey, at p. 521, 47 S.Ct. 437.) "[I]t certainly violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." (Tumey, at p. 523, 47 S.Ct. 437.) "It is certainly not fair to each defendant brought before the mayor for the careful and judicial consideration of his guilt or innocence that the prospect of such a prospective loss by the mayor should weigh against his a[c]quittal." (Tumey, at p. 532, 47 S.Ct. 437.) Because Tumey was solely concerned with the financial interest of the adjudicator, it is not relevant to the financial interest of private counsel assisting in the prosecution of a proceeding. Private counsel here are not playing an adjudicative role in the proceedings.
Ward v. Village of Monroeville, Ohio (1972) 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (Ward), like Tumey, found a due process violation where a mayor served as the adjudicator. The only difference between Ward and Tumey was that the mayor in Ward did not personally benefit from conviction, but had an interest in conviction because the fines funded the village's budget. *852 In Marshall v. Jerrico, Inc. (1980) 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (Marshall), the United States Supreme Court concluded that "that the strict requirements of Tumey and Ward are not applicable to the determinations of the assistant regional administrator, whose functions resemble those of a prosecutor more closely than those of a judge." (Marshall, at p. 243, 100 S.Ct. 1610.) Thus, the "strict requirements" of Tumey and Ward apply only to adjudicators, not to those who are functioning like prosecutors.
The public entities note that Clancy distinguished Sedelbauer v. State (1983) 455 N.E.2d 1159 (Sedelbauer). In a footnote responding to James Clancy's reliance on Sedelbauer, the California Supreme Court briefly noted that Sedelbauer "approved the assistance of a private attorney only because he appeared `not in place of the State's duly authorized counsel'" (Clancy, supra, 39 Cal.3d at p. 749, fn. 3, 218 Cal.Rptr. 24, 705 P.2d 347.) In Sedelbauer, the Indiana appellate court found no error in the fact that a private attorney with a private interest in the suppression of pornography had served as cocounsel in a criminal obscenity prosecution and "appeared with a deputy prosecuting attorney, and not in place of the State's duly authorized counsel." (Sedelbauer, at p. 1164.) We agree with the public entities that Clancy's treatment of Sedelbauer suggests that there is a critical distinction between a private attorney who supplants the public entity's "duly authorized counsel" and a private attorney who serves only in a subordinate role as "co-counsel" to the public entity's in-house counsel.
Two other cases relied on by the public entities also provide some support for their claim that absolute neutrality is not required of private counsel who are merely assisting in-house counsel and have no control over the litigation.
In Philip Morris Inc. v. Glendening (1998) 349 Md. 660, 709 A.2d 1230 (Glendening), the State of Maryland entered into a contingent fee agreement with private counsel to pursue a tort action against tobacco companies. Private counsel would be paid only out of a "money judgment," and there was no indication that the action would include a public nuisance abatement cause of action. (Glendening, at pp. 1231-1233.) The tobacco companies sought to invalidate the contingent fee agreement. The Maryland Court of Appeals distinguished Clancy in its ruling validating the agreement. "[N]o constitutional or criminal violations [are] directly implicated here, and, hence, there is no potential conflict of interest. Also, and more important, notably absent from Clancy is a legislative enactment authorizing the `special employment' of outside counsel in `extraordinary' cases. Equally important, is the absence of the oversight of an elected State official, who `shall have the authority to control all aspects of [outside counsel's] handling of the litigation,' and whose `authority shall be final, sole and unreviewable.' [Citation.] These, we believe, are significant material distinctions which permit a finding that the instant contingency fee contract is not violative of due process or public policy." (Glendening, at pp. 1242-1243.) Although Glendening was not a public nuisance abatement action, the fact that it distinguished Clancy in part on the ground that control would be exercised by the state rather than by private counsel supports our conclusion that absolute neutrality is not required of private counsel here.
In City and County of San Francisco v. Philip Morris, Inc. (N.D.Cal.1997) 957 F.Supp. 1130 (CCSF), tobacco company defendants, relying on Clancy, sought to *853 disqualify the private attorneys hired by the public entity plaintiffs to assist in the prosecution of a lawsuit. The lawsuit alleged a variety of causes of action, but it did not include any public nuisance abatement cause of action. (CCSF, at pp. 1134-1135.) The federal district court distinguished Clancy and refused to disqualify the private attorneys. (CCSF, at pp. 1135-1136.) "[The private attorneys are] acting here as co-counsel, with plaintiffs' respective government attorneys retaining full control over the course of the litigation. Because plaintiffs' public counsel are actually directing this litigation, the Court finds that the concerns expressed in Clancy regarding overzealousness on the part of private counsel have been adequately addressed.... [¶] The Court also finds that the civil tort nature of this action meaningfully distinguishes it from Clancy. This lawsuit, which is basically a fraud action, does not raise concerns analogous to those in the public nuisance or eminent domain contexts discussed in Clancy. Plaintiffs' role in this suit is that of a tort victim, rather than a sovereign seeking to vindicate the rights of its residents or exercising, governmental powers. [¶] Finally, the case as it stands now will not require the private attorneys to argue about the policy choices or value judgments suggested by defendants regarding the regulation of tobacco. Rather, plaintiffs' attorneys simply will be arguing, as they likely have in many other cases for private sector clients, that a tort has been committed against their clients." (CCSF, at p. 1135.)
While the litigation in CCSF was not a public nuisance abatement action, and the court distinguished Clancy on that ground, the court also distinguished Clancy on the ground that the private attorneys would not be controlling the litigation, which would be controlled by the public entities' in-house counsel. Thus, CCSF too provides some support for our conclusion that absolute neutrality is not required where private counsel serve in a subordinate role and lack any control over the litigation.

E. Conclusion
Clancy itself does not bar the public entities from engaging private counsel under a contingent fee arrangement to assist in this litigation, so long as the public entities' in-house counsel retain control over all decision-making. The record before us contains absolutely no evidence that private counsel have ever engaged in any conduct that invaded the sphere of control exercised by the public entities' in-house counsel.[11] No authority supports barring private counsel from assisting the public entities under a contingent fee arrangement in this litigation. Therefore, the superior court's order is unjustified, and we will direct the court to set it aside.

III. Disposition
Let a writ of mandate issue commanding the superior court to set aside its order granting the companies' motion and to enter a new order denying the motion. The public entities shall recover their costs.
I CONCUR: McADAMS, J.
BAMATTRE-MANOUKIAN, J., Concurring.
I concur in the result reached in the majority opinion that the California Supreme Court's decision in People ex rel. Clancy v. Superior Court (1985) 39 Cal.3d 740, 218 Cal.Rptr. 24, 705 P.2d 347 (Clancy) *854 does not bar the public entity plaintiffs in this case from retaining private counsel under their current contingency fee agreements to assist the government attorneys in the litigation of this public nuisance abatement action. I write separately to express my view that the determination of whether a contingency fee agreement between a public entity and private counsel is barred in a public nuisance abatement action is a factual determination that must be made on a case-by-case basis.
Our Supreme Court has instructed that prosecutorial neutrality is required in a public entity's prosecution of a public nuisance abatement action. (Clancy, supra, 39 Cal.3d at pp. 748-749, 218 Cal.Rptr. 24, 705 P.2d 347.) To ensure that a contingency fee agreement is not "antithetical to the standard of neutrality that an attorney representing the government must meet when prosecuting a public nuisance abatement action" (id. at p. 750, 218 Cal.Rptr. 24, 705 P.2d 347), I believe the court must review the factual circumstances of each case to determine whether, as a result of the contingency fee agreement, "the prosecutor's discretionary decisionmaking has been placed within the influence or control of an interested party" (Hambarian v. Superior Court (2002) 27 Cal.4th 826, 841, 118 Cal.Rptr.2d 725, 44 P.3d 102 (Hambarian)) or is subject to "conflicting personal interests" (People v. Superior Court (Greer) (1977) 19 Cal.3d 255, 267, 137 Cal. Rptr. 476, 561 P.2d 1164).
As I will explain, my conclusion that a case-by-case factual determination is required derives from a careful review of the decision in Clancy and other decisions of the California Supreme Court, as well as decisions of the federal and state courts. I have also carefully considered the important public policy issues addressed in Clancy and in the helpful briefs of the parties and the amicus curiae.[1]
I also write separately to recognize the court's inherent power to review contingency fee agreements (Roa v. Lodi Medical Group, Inc. (1985) 37 Cal.3d 920, 933, 211 Cal.Rptr. 77, 695 P.2d 164), which will allow the trial court to oversee the propriety of the contingency fee agreements *in this case throughout the course of the litigation.

A. The Clancy Decision

The contingency fee agreement at issue in Clancy was between a private attorney, James Clancy, and the City of Corona (City). Included in Clancy's employment contract with the City was a fee agreement providing that "Clancy is to be paid $60 per hour, `provided, however, that with respect to each and every suit undertaken by Attorney hereunder which results in a final judgment against City, said fee shall be reduced to $30.00 per hour ... and provided further that said fee of $60.00 shall also be reduced to $30.00 per hour ... in each and every suit undertaken by Attorney hereunder in which City is a successful party if and to the extent that the City does not recover its attorney's fees from the unsuccessful party or parties.'" (Clancy, supra, 39 Cal.3d at p. 745, 218 Cal.Rptr. 24, 705 P.2d 347.)
After the City adopted a resolution declaring a business selling sexually explicit materials, known as the "Book Store," to *855 be a public nuisance, Clancy, on behalf of the City as its "`special attorney,'" filed a complaint against the Book Store and its owners for abatement of a public nuisance, declaratory judgment, and an injunction. (Clancy, supra, 39 Cal.3d at pp. 743-744, 218 Cal.Rptr. 24, 705 P.2d 347.) City later amended its complaint to substitute "`City Attorney of Corona'" as Clancy's title in the action. (Id. at p. 744, 218 Cal.Rptr. 24, 705 P.2d 347.) The trial court denied the defendants' motion to disqualify Clancy as attorney for the City, and the defendants subsequently sought a writ of prohibition from the California Supreme Court "to bar the People from proceeding with Clancy instead of the regular City Attorney of Corona as its representative...." (Ibid.) The defendants contended that it was improper for Clancy to have a financial stake in the outcome because an attorney prosecuting a public nuisance action must be neutral.
To determine whether Clancy should be disqualified, the California Supreme Court evaluated "the propriety of a contingent fee agreement between a city government and a private attorney whom it hired to bring abatement actions under the city's nuisance ordinance." (Clancy, supra, 39 Cal.3d at p. 743, 218 Cal.Rptr. 24, 705 P.2d 347.) The court began its evaluation by examining the requirement of neutrality for public prosecutors in criminal prosecutions and government attorneys in eminent domain actions. (Clancy, supra, 39 Cal.3d at pp. 748-749, 218 Cal.Rptr. 24, 705 P.2d 347.) Regarding criminal prosecutions, the Clancy court noted that "[c]ontingent fee contracts for criminal prosecutors have been recognized to be unethical and potentially unconstitutional...." (Id. at p. 748, 218 Cal.Rptr. 24, 705 P.2d 347.) The court then determined that "[t]he justification for the prohibition against contingent fees in criminal actions extends to certain civil cases." (Ibid.) The "certain civil cases" included eminent domain actions, because the government attorney in an eminent domain action occupies "`a position analogous to a public prosecutor'" and is therefore "`"possessed ... of important governmental powers that are pledged to the accomplishment of one objective only, that of impartial justice." [Citation.]'" (Id. at pp. 748-749, 218 Cal.Rptr. 24, 705 P.2d 347.)
The requirement of a neutral prosecuting attorney also extended to public nuisance abatement actions, the Clancy court reasoned, because a public nuisance abatement action is similar to an eminent domain action. Both types of actions involve a balancing of the interests of the public and the landowner. (Clancy, supra, 39 Cal.3d at p. 749, 218 Cal.Rptr. 24, 705 P.2d 347.) "Thus, as with an eminent domain action, the abatement of a public nuisance involves a delicate weighing of values. Any financial arrangement that would tempt the government attorney to tip the scale cannot be tolerated." (Id. at p. 749, 218 Cal.Rptr. 24, 705 P.2d 347.)
Moreover, the Clancy court observed, "[p]ublic nuisance abatement actions share the public interest aspect of eminent domain and criminal cases, and often coincide with criminal prosecutions." (Clancy, supra, 39 Cal.3d at p. 749, 218 Cal.Rptr. 24, 705 P.2d 347.) "A suit to abate a public nuisance can trigger a criminal prosecution of the owner of the property. This connection between the civil and criminal aspects of public nuisance law further supports the need for a neutral prosecuting attorney" (Ibid., fn. omitted.)
Having determined that a neutral prosecuting attorney was required in a public nuisance abatement action, the Clancy court examined Clancy's contingency fee agreement to evaluate whether prosecutorial neutrality would be maintained in the *856 City's public nuisance action against the Book Store. The court found that Clancy had "an interest in the result of the case: his hourly rate will double if the City is successful in the litigation. Obviously this arrangement gives him an interest extraneous to his official function in the actions he prosecutes on behalf of the City." (Clancy, supra, 39 Cal.3d at pp. 747-748, 218 Cal.Rptr. 24, 705 P.2d 347.) Consequently, the court held that Clancy should be disqualified because his contingency fee agreement was "antithetical to the standard of neutrality that an attorney representing the government must meet when prosecuting a public nuisance abatement action." (Id. at p. 750, 218 Cal.Rptr. 24, 705 P.2d 347.)
The Clancy court issued a writ of mandate that, among other things, directed the trial court to issue an order dismissing Clancy as the City's attorney in the pending public nuisance abatement action. (Clancy, supra, 39 Cal.3d at p. 750, 218 Cal.Rptr. 24, 705 P.2d 347.) However, in a footnote the court stated that "on remand the action herein should be brought in the name of Dallas Holmes, the Corona City Attorney. The City may hire Clancy to represent Holmes." (Id. at p. 750, fn. 5, 218 Cal.Rptr. 24, 705 P.2d 347.)

B. The Test for Prosecutorial Neutrality.

As I have discussed, the Clancy court indicated, in holding that Clancy's contingency fee agreement with the City of Corona violated the standard for prosecutorial neutrality, that the standard of neutrality that applies to a government attorney in a public nuisance abatement action is the same standard that applies to a public prosecutor in a criminal action. (Clancy, supra, 39 Cal.3d at pp. 748-749, 218 Cal.Rptr. 24, 705 P.2d 347.) Therefore, for the purpose of evaluating the propriety of a contingency fee agreement in a public nuisance abatement action, decisions concerning the disqualification of a district attorney's office for a violation of the standard of neutrality are instructive.
The Clancy court's analysis relied in part on an earlier California Supreme Court decision, Greer, supra, 19 Cal.3d 255, 137 Cal.Rptr. 476, 561 P.2d 1164, for the proposition that a government attorney, like a public prosecutor, must be absolutely neutral. (Clancy, supra, 39 Cal.3d at pp. 746-747, 218 Cal.Rptr. 24, 705 P.2d 347.) In Greer, the defendants sought the disqualification of the district attorney on the ground that a conflict of interest existed because the victim's mother was employed in the district attorney's office. (Greer, supra, 19 Cal.3d at p. 259, 137 Cal.Rptr. 476, 561 P.2d 1164.) Our Supreme Court affirmed the trial court's order disqualifying the district attorney because the prosecutor might have an "emotional stake" in the case that could "disturb his exercise of impartial judgment in pretrial and trial proceedings." (Id. at p. 270, 137 Cal.Rptr. 476, 561 P.2d 1164.)
The Greer court's analysis of the disqualification issue was based-upon the defendant's fundamental due process right not to be deprived of liberty without a fair trial and the prosecutor's obligation "to respect this mandate." (Greer, supra, 19 Cal.3d at p. 266, 137 Cal.Rptr. 476, 561 P.2d 1164.) "The prosecutor is a public official vested with considerable discretionary power to decide what crimes are to be charged and how they are to be prosecuted. [Citations.] In all his [or her] activities, his [or her] duties are conditioned by the fact that he [or she] "is the representative not of any ordinary party to a controversy, but of a sovereignty whose obligation is to govern impartially ... and whose interest, therefore, in a criminal *857 prosecution is not that it shall win a case, but that justice shall be done.' [Citations.]" (Ibid.; People v. Fierro (1991) 1 Cal.4th 173, 208, 3 Cal.Rptr.2d 426, 821 P.2d 1302.)
In Greer, our Supreme Court also recognized that the requirement of prosecutorial impartiality arose from the prosecutor's discretionary powers. "[I]t is precisely because the prosecutor enjoys such broad discretion that the public he [or she] serves and those he [or she] accuses may justifiably demand that he [or she] perform his [or her] functions with the highest degree of integrity and impartiality, and with the appearance thereof." (Greer, supra, 19 Cal.3d at pp. 266-267, 137 Cal. Rptr. 476, 561 P.2d 1164.) Thus, "the advantage of public prosecution is lost if those exercising the discretionary duties of the district attorney are subject to conflicting personal interests which might tend to compromise their impartiality. In short, the prosecuting attorney `"is the representative of the public in whom is lodged a discretion which is not to be controlled by the courts, or by an interested individual ...."' [Citation.]" (Id. at p. 267, 137 Cal. Rptr. 476, 561 P.2d 1164.)
In Hambarian, supra, 27 Cal.4th 826, 118 Cal.Rptr.2d 725, 44 P.3d 102, our Supreme Court also addressed the issue of prosecutorial neutrality. The court considered the merits of the defendant's motion to disqualify the district attorney's office on the ground that the district attorney had accepted the services of a forensic accountant who was compensated by the victim, the City of Orange. (Id. at p. 829, 118 Cal.Rptr.2d 725, 44 P.3d 102.) Under Penal Code section 1424, a motion to disqualify a prosecutor on the ground of conflict of interest may not be granted unless "the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial." (Pen.Code, § 1424, subd. (a)(1).) The court recognized, as it did in Greer, that a public prosecutor is required to "act in an impartial manner" because he or she has "broad discretion over the entire course of the criminal proceedings...." (Hambarian, supra, 27 Cal.4th at pp. 839-840, 118 Cal.Rptr.2d 725, 44 P.3d 102.) Accordingly, the Hambarian court determined that the proper test for a disqualifying conflict of interest under Penal Code section 1424 is whether "the prosecutor's discretionary decisionmaking has been placed within the influence or control of an interested party." (Id. at p. 841, 118 Cal. Rptr.2d 725, 44 P.3d 102, fn. omitted.)
Our Supreme Court in Hambarian further instructed that a motion for disqualification of a district attorney's office should be reviewed on a case-by-case basis, because "no one factor will compel disqualification in all cases; `the entire complex of facts' must be reviewed to determine 'whether the conflict makes fair and impartial treatment of the defendant unlikely.' [Citation.]" (Hambarian, supra, 27 Cal.4th at p. 834, 118 Cal.Rptr.2d 725, 44 P.3d 102; People v. Eubanks (1996) 14 Cal.4th 580, 599, 59 Cal.Rptr.2d 200, 927 P.2d 310.) Therefore, because the evidence showed that the forensic consultant had no control over "critical prosecutorial decisions," the Hambarian court determined that the motion to disqualify the district attorney's office was properly denied. (Id. at pp. 839, 842, 118 Cal.Rptr.2d 725, 44 P.3d 102.) Citing Clancy, the court explained that "recusal [of the district attorney] is not necessary to ensure [the defendant's] right to fair treatment during all portions of the criminal proceedings. [Citation.]" (Hambarian, supra, 27 Cal.4th at p. 840, 118 Cal.Rptr.2d 725, 44 P.3d 102.)
Review of these California Supreme Court cases clarifies that a public prosecutor *858 may be disqualified if a case-by-case review of the factual circumstances surrounding the claimed conflict of interest indicates that "the prosecutor's discretionary decisionmaking has been placed within the influence or control of an interested party" (Hambarian, supra, 27 Cal.4th at p. 841, 118 Cal.Rptr.2d 725, 44 P.3d 102), or is subject to "conflicting personal interests" (Greer, supra, 19 Cal.3d at p. 267, 137 Cal.Rptr. 476, 561 P.2d 1164). Thus, the test for a disqualifying conflict of interest may be stated as follows: where the factual circumstances in a case indicate that the public prosecutor's discretionary decisionmaking is not likely to be impartial, the standard of neutrality has been violated and the prosecutor may be disqualified.
The test for a disqualifying conflict of interest established by the California Supreme Court in Hambarian and Greer is equally applicable in civil actions, because a government lawyer in a civil action occupies "a position analogous to a public prosecutor [and] is `possessed ... of important governmental powers that are pledged to the accomplishment of one objective only, that of impartial justice.' [Citation.]" (City of Los Angeles v. Decker (1977) 18 Cal.3d 860, 871, 135 Cal.Rptr. 647, 558 P.2d 545.) Thus, "`[a] government lawyer in a civil action ... has the responsibility to seek justice and to develop a full and fair record, and he [or she] should not use his [or her] position or the economic power of the government to harass parties or to bring about unjust settlements or results.' [Citation]." (Ibid.)
The California Supreme Court in Clancy applied the test for a disqualifying conflict of interest in a civil action when the court found that a contingency fee agreement doubling the fees of a private attorney who succeeded in prosecuting a public nuisance abatement action created a conflict of interest, due to the private attorney's personal financial interest in the litigation. (Clancy, supra, 39 Cal.3d at pp. 749-750, 218 Cal.Rptr. 24, 705 P.2d 347.) The private attorney was apparently able, under his contingency fee agreement, to exercise the discretionary decisionmaking authority of a government attorney in litigating the public nuisance action, with the sole exception that the city council would decide whether to bring an action under the public nuisance ordinance. (Id. at p. 749, fn. 4, 218 Cal.Rptr. 24, 705 P.2d 347.) Therefore, the factual circumstances in Clancy demonstrated that as a result of the contingency fee agreement, the private attorney was not likely to be impartial in his discretionary decisionmaking. The Clancy court therefore determined that the contingency fee agreement in that case was "antithetical to the standard of neutrality that an attorney representing the government must meet when prosecuting a public nuisance abatement action." (Id. at p. 750, 218 Cal.Rptr. 24, 705 P.2d 347.)

C. Federal and State Court Decisions

Federal and state courts have also grappled with the issue of the propriety of a contingency fee agreement between a public entity and private counsel. Several decisions support a general rule that a contingency fee agreement is permitted, even though private counsel retains a financial stake in the outcome, where the agreement provides that government attorneys will maintain control over the discretionary decisionmaking throughout the litigation.
In Ohio, the federal court recently considered the Sherwin-Williams Company's challenge to the contingency fee agreements between three Ohio cities and private counsel in lead paint litigation. (Sherwin-Williams Co. v. City of Columbus (S.D. Ohio, July 18, 2007, No. C2-06-829, 2007 WL 2079774, 2007 U.S. Dist. *859 Lexis 51945 (Sherwin-Williams).) The court's original ruling on Sherwin-Williams's motion for injunctive relief directed the cities to amend their contingency fee agreements because the court found that "the contingency fee agreements between private counsel and the three cities were unconstitutional insofar as the agreements reposed an impermissible degree of public authority upon retained counsel, who have a financial incentive not necessarily consistent with the interests of the public body." (Id., 2007 WL 2079774 at p. *1, 2007 U.S. Dist. Lexis 51945 at pp. **3-4.)
In a subsequent ruling, the federal court in Sherwin-Williams approved the two contingency fee agreements that had been amended to expressly vest in the city attorney "control over the litigation and the sole authority to authorize any settlement of any claim or complaint." (Sherwin-Williams, supra, 2007 WL 2079774, p. *1, 2007 U.S. Dist. Lexis 51945, p. *6.) However, the court found that the third contingency fee agreement was not adequately amended because the agreement provided that neither private counsel nor the city could settle or dismiss the case without the consent of the other. (Id., 2007 WL 2079774 at p. *3, 2007 U.S. Dist. Lexis 51945 at p. *10.) The court stated that it had made it "abundantly clear" in its previous ruling that a contingency fee agreement "between a municipality and private counsel in a public nuisance action which purports to vest in private counsel authority to prevent a settlement or dismissal of a suit is unconstitutional." (Ibid.)
In a public nuisance abatement action in California, the federal court considered the defendants' motion to disqualify private counsel on the ground that their contingency fee agreement violated the government attorney's duty of neutrality. (City of Grass Valley v. Neivmont Mining Corp. (E.D. Cal., Nov. 20, 2007, No. 2:04-cv-00149-GEB-DAD, 2007 WL 4166238, 2007 U.S. Dist. Lexis 89187.) Relying on Clancy, the defendants argued that a public entity could not hire private counsel on a contingency fee basis to litigate a public nuisance abatement action. The federal court rejected this argument and denied the disqualification motion, finding that defendants had not "countered Plaintiffs showing that the City Attorney for the City of Grass Valley is acting as co-counsel in this action and the City retains `ultimate decision-making authority in the case.' [Citation.]" (Grass v. Neivmont Mining Corp., supra, 2007 WL 4166238, p. *1, U.S. Dist. Lexis 89187, p. *3.)
In tort litigation involving a state's claim against the tobacco industry for recovery of the health care costs of citizens with tobacco-related illnesses, the defendants also relied on Clancy to challenge the legality of a contingency fee agreement between a public entity and its private counsel. In Philip Morris Inc. v. Glendening (1998) 349 Md. 660, 709 A.2d 1230 (Glendening), the Maryland Court of Appeals rejected the defendants' challenge to the contingency fee agreement between the Attorney General of Maryland and the private law firm that represented the State of Maryland in tort litigation against the tobacco industry. The contingency fee agreement expressly provided that the "`Attorney General shall have the authority to control all aspects of [outside counsel's] handling of the litigation ... [and] such authority shall be final, sole and unreviewable.' [Citation.]" (Id. at p. 663, 709 A.2d 1230.)
After determining that state law authorized the Attorney General to enter into contingency fee agreements, the Glendening court addressed the defendants' claim that the contingency fee agreement violated due process and public policy under the *860 principle, as illustrated in Clancy, that a public officer should not participate in a matter in which he or she has a personal or pecuniary interest. (Glendening, supra, 349 Md. at p. 684, 709 A.2d 1230.) The Maryland court determined that Clancy was distinguishable because the case before it did not directly implicate any constitutional or criminal violations. "Equally important," the court also found, was the absence in Clancy "of the oversight of an elected State official, who `shall have the authority to control all aspects of [outside counsel's] handling of the litigation,' and whose `authority shall be final, sole and unreviewable." (Id. at p. 686, 709 A.2d 1230.) The court therefore held that the Maryland Attorney General's oversight prevented outside counsel's financial interest in the outcome of the tobacco litigation from violating prosecutorial neutrality. (Id. at p. 688, 709 A.2d 1230.)
The federal court similarly determined in City and County of San Francisco v. Philip Morris, Inc. (N.D.Cal.1997) 957 F.Supp. 1130 (Philip Morris) that a contingency fee agreement between several public entities and the private law firm of Lieff, Cabraser, Heinmann & Bernstein in tobacco-related tort litigation was not barred under Clancy. The court stated, "While the contingent fee arrangement here clearly gives Lieff, Cabraser a stake in the litigation, the Court finds that this case is sufficiently distinguishable from Clancy to allow for the government's retention of private counsel. First, as plaintiffs explain, Lieff, Cabraser is acting here as co-counsel, with plaintiffs' respective government attorneys retaining full control over the course of the litigation. Because plaintiffs' public counsel are actually directing this litigation, the Court finds that the concerns expressed in Clancy regarding overzealousness on the part of private counsel have been adequately addressed by the arrangement between Lieff, Cabraser and the plaintiffs." (Id. at p. 1135.) The court in Philip Morris also found that the case before it was a civil tort action, which further distinguished it from Clancy. (Ibid.)
Thus, these federal and state courts have ruled that the propriety of a contingency fee agreement between a public entity and private counsel must be evaluated on a case-by-case basis, by examining the terms of the agreement to determine whether prosecutorial neutrality has been preserved by the government attorneys retaining control over discretionary decisionmaking, such as settlement and dismissal, and by considering the factual circumstances of each case.

D. Petitioners' Contingency Fee Agreements

Based on my review of California Supreme Court authority and the decisions of federal and state courts, I believe that the court must evaluate the propriety of a contingency fee agreement between a public entity and private counsel in a public nuisance abatement action on a case-by-case basis. The factual circumstances of each case and the terms of each contingency fee agreement should be reviewed to determine whether "the prosecutor's discretionary decisionmaking has been placed within the influence or control of an interested party" (Hambarian, supra, 27 Cal.4th at p. 841, 118 Cal.Rptr.2d 725, 44 P.3d 102), or is subject to "conflicting personal interests" (Greer, supra, 19 Cal.3d at p. 267, 137 Cal.Rptr. 476, 561 P.2d 1164). If so, the contingency fee agreements must be barred because the agreements are "antithetical to the standard of neutrality that an attorney representing the government must meet when, prosecuting a public nuisance abatement action." (Clancy, supra, 39 Cal.3d. at p. 750, 218 Cal.Rptr. 24, 705 P.2d 347.)
*861 Applying this test, I agree with the majority that, based on the record in this original proceeding, the current contingency fee agreements are not antithetical to the standard of neutrality that a government attorney must meet in a public nuisance abatement action. Here, the terms of the contingency fee agreements expressly provide that the government attorneys retain "complete control" of the litigation, including, in some instances, "all decision making authority and responsibility." It is therefore reasonable to assume at this point in the litigation that the government attorneys intend to retain control over all discretionary decisionmaking. Moreover, the factual circumstances do not include a pending or anticipated criminal prosecution arising from the alleged public nuisance, and therefore the bar on contingency fee agreements in criminal prosecutions (Clancy, supra, 39 Cal.3d at p. 748, 218 Cal.Rptr. 24, 705 P.2d 347) is not implicated. For these reasons, I believe that a contingency fee agreement is permissible in the present public nuisance abatement action and that it is not likely, under the current terms of the petitioners' contingency fee agreements, that the requirement of prosecutorial neutrality in public nuisance abatement actions will be violated.
In reaching this conclusion, I recognize the trial court's concern that "as a practical matter, it would be difficult to determine (a) how much control the government attorneys must exercise in order for a contingent fee arrangement with outside counsel [to] be permissible, (b) what types of decisions the government attorneys must retain control over, e.g., settlement or major strategy decisions, or also day-to-day decisions involving discovery and so forth, and (c) whether the government attorneys have been exercising such control throughout the litigation or whether they have passively or blindly accepted recommendations, decisions, or actions by outside counsel."
However, as I have stated, the California Supreme Court has instructed that the decisions over which the government attorneys must retain control in a public nuisance abatement action are the discretionary decisions. In the public prosecutor context, our Supreme Court has observed that the prosecutor "has broad discretion over the entire course of the criminal proceedings, from the investigation and gathering of evidence, through the decisions of whom to charge and what charges to bring, to the numerous choices at trial to accept, oppose, or challenge judicial rulings." (Hambarian, supra, 27 Cal.4th at p. 840, 118 Cal.Rptr.2d 725, 44 P.3d 102.) In Clancy, the court stated that "`[t]he prosecutor's discretionary functions are not confined to the period before the filing of charges ... A district attorney may thus prosecute vigorously, but both the accused and the public have a legitimate expectation that his [or her] zeal, as reflected in his [or her] tactics at trial, will be born of objective and impartial consideration of each individual case.'" (Clancy, supra, 39 Cal.3d at p. 749, fn. 4, 218 Cal. Rptr. 24, 705 P.2d 347.) With respect to eminent domain actions, the court has emphasized that "`[a] government lawyer in a civil action . .. should not use his [or her] position or the economic power of the government to harass parties or to bring about unjust settlements or results." (City of Los Angeles v. Decker, supra, 18 Cal.3d at p. 871, 135 Cal.Rptr. 647, 558 P.2d 545.)
Thus, as emphasized in Clancy and Decker, it is the consequences of discretionary decisionmaking, rather than the details of each decision, that are significant in determining whether the standard of neutrality has been met in the litigation of a public nuisance abatement action. *862 (Clancy, supra, 39 Cal.3d at p. 749, fn. 4, 218 Cal.Rptr. 24, 705 P.2d 347; City of Los Angeles v. Decker, supra, 18 Cal.3d at p. 871, 135 Cal.Rptr. 647, 558 P.2d 545.) Where zealous representation of the government by private counsel has a result that is just and consistent with the public interest, and the conduct of the litigation is "born of objective and impartial consideration," the trial court may reasonably determine that the government attorneys have maintained control of the discretionary decisionmaking and therefore prosecutorial neutrality has been preserved.
The trial court also has an important oversight role in ensuring prosecutorial neutrality, because the court has the "inherent power to review attorney fee contracts and to prevent overreaching and unfairness." (Roa v. Lodi Medical Group, Inc., supra, 37 Cal.3d at p. 933, 211 Cal. Rptr. 77, 695 P.2d 164.) Thus, as a federal district court has noted, "`"[A]n attorney's right to contract for a contingent fee is not completely beyond judicial control." A lawyer is first an officer of the court, and as such his [or her] commercial contractual rights must yield to his [or her] duty.' [Citation.]" (Sarei v. Rio Tinto PLC (C.D.Cal.2002) 221 F.Supp.2d 1116, 1168; see also State of North Dakota v. Hagerty (1998) 1998 N.D. 122, 580 N.W.2d 139, 148 [court's inherent power to supervise attorney fees].) Thus, the propriety of a contingency fee agreement may be raised at any time in the litigation, whether by a motion for disqualification or other procedural means such as the "motion to bar payment of contingent fees to private attorneys" that was filed in the case at bar.
Finally, because the decisions of the California Supreme Court, the federal courts and other state courts support my view that the propriety of a contingency fee agreement in a public nuisance abatement action must be determined on a case-by-case basis, I do not believe that the language of the contingency fee agreement is the only factor to be considered. Other significant factors must also be considered. For example, there may be public nuisance abatement actions in which parallel criminal prosecutions are pending or anticipated, because as the Clancy court noted, "Public nuisance abatement actions ... often coincide with criminal prosecutions. These actions are brought in the name of the People by the district attorney or city attorney. (Code Civ. Proa, § 731.) A person who maintains or commits a public nuisance is guilty of a misdemeanor. (Pen. Code, § 372.)" (Clancy, supra, 39 Cal.3d at p. 749, 218 Cal.Rptr. 24, 705 P.2d 347, fn. omitted.) Another important factor that must be considered is the conduct of plaintiffs' counsel, which may reveal whether the government attorneys' discretionary decisionmaking has been placed within the influence or control of an interested party (Hambarian, supra, 27 Cal.4th at p. 841, 118 Cal.Rptr.2d 725, 44 P.3d 102), or is subject to conflicting personal interests (Greer, supra, 19 Cal.3d at p. 267, 137 Cal.Rptr. 476, 561 P.2d 1164).
Thus, the propriety of a contingency fee agreement in a public nuisance action must be evaluated by careful consideration of the many important factors in each case, including the factual circumstances, the terms of the contingency fee agreement, and the conduct of plaintiffs counsel, because, as the Clancy court stated, "The justification for the prohibition against contingent fees in criminal actions extends to certain civil cases." (Clancy, supra, 39 Cal.3d at p. 748, 218 Cal.Rptr. 24, 705 P.2d 347.)
Therefore, based on my review of the factual circumstances in this case and the terms of the contingency fee agreements, I would conclude that the California Supreme Court's decision in Clancy, supra, *863 39 Cal.3d 740, 218 Cal.Rptr. 24, 705 P.2d 347 does not bar the public entity plaintiffs in this case from retaining private counsel under their current contingency fee agreements to assist the government attorneys in the litigation of this public nuisance abatement action
I recognize, however, that the issue of the circumstances under which public entities may properly retain private counsel under contingency fee agreements to assist in the litigation of public nuisance abatement actions is of great public significance. For this reason, I would respectfully invite the California Supreme Court to review this issue and to provide guidance to the courts and public entities in this important and developing area of the law.
NOTES
[1] The petitioners in this case are Santa Clara County (Santa Clara), San Mateo County (San Mateo), Monterey County (Monterey), Solano County (Solano), Los Angeles County (LA County), Alameda County (Alameda), City and County of San Francisco (San Francisco), City of Oakland (Oakland), City of Los Angeles (LA City), and City of San Diego (San Diego).
[2] At the hearing, the superior court noted that it was "somewhat puzzled as to what a contingent fee would be based upon if you're not permitted, to [re]cover damages...." The court noted that attorney's fees were not available in this type of public nuisance abatement action. "The fact that ... you may not recover damages for a public nuisance that may be abated seems to me would eliminate thethe necessity of having the valueof having a contingent fee agreement with counsel...."

The public entities asserted that the motion was not "ripe" because it could not be predicted what type of remedy or fees would be available. Private counsel for the public entities asserted that "[i]f there is no recovery in this case from any monetary funds, the people who are going to suffer here are the folks who are assisting county counsel. We believe at this time since we have not had the benefit of analyzing what the remedies are going to be for this type of abatement we can't forecast that." "The risk truly is on private counsel. We may never see a nickel from the case."
The attorney for the companies admitted that, "[o]n the question of non ripeness," he was "confused about the common fund issue and where a contingency might come from." "Now if the plaintiffs ultimately figure out a way to have a pot of money against which a seventeen percent contingency could apply," the contingency fee would be a "vast[]" amount of money.
[3] Numerous amicus curiae briefs have also been filed in this proceeding.
[4] The attorney for the companies asserted at the hearing on the motion that the companies "do not ask for disqualification" but only that "the paying of contingency fees be barred."
[5] "Nothing we say herein should be construed as preventing the government, under appropriate circumstances, from engaging private counsel. Certainly there are cases in which a government may hire an attorney on a contingent fee to try a[n ordinary] civil case." (Clancy, supra, 39 Cal.3d at p. 748, 218 Cal.Rptr. 24, 705 P.2d 347.)
[6] Four of the public entities submitted declarations to the effect that they had "retained and continue[d] to retain complete control of the litigation," were "actively involved in and direct[ed] all decisions related to the litigation," and have "direct oversight over the work of outside counsel." San Francisco declared that "[t]he San Francisco City Attorney's Office has in fact retained control over all significant decisions" in this case.
[7] Private counsel Cotchett, Pitre & McCarthy (Cotchett) submitted a declaration in which it stated that it had been retained by Santa Clara, Solano, Alameda, Oakland, Monterey, San Mateo, and San Diego. Cotchett asserted that the public entities' in-house counsel "have maintained and continue to maintain complete control over all aspects of the litigation" and "all decision making authority and responsibility." Private counsel Thornton & Naumes, private counsel Motley, Rice, and private counsel Mary E. Alexander submitted declarations asserting that they had been retained by San Francisco to assist in this litigation. They asserted that San Francisco's City Attorney "has retained complete control over this litigation" and has "exercised full decision-making authority and responsibility."
[8] Oakland submitted a declaration by a city attorney that: "Notwithstanding any documents suggesting the contrary, the Office of the City Attorney has retained complete control over the prosecution of the public nuisance cause of action in this case as it relates to the interests of the People of the City of Oakland." Oakland asserted that it was "in the process of revising" its fee agreement "so that it reflects the reality of the relationship" between Oakland and its private counsel.
[9] Seven separate fee agreements between the various public entity petitioners and their private counsel were before the superior court and are before us. These fee agreements are between private counsel and Santa Clara, Monterey, San Francisco, Solano, Oakland, Alameda, and San Diego.

No fee agreements are before us involving LA City, LA County or San Mateo. LA City submitted a declaration below stating that it has not yet joined the litigation and has not retained private counsel, although it anticipates joining the litigation and needing the services of private counsel.
San Mateo did not submit a fee agreement, but it submitted a declaration by its in-house counsel in which in-house counsel asserted that it "has retained and continues to retain complete control of the litigation and retains final authority over all aspects of the litigation." The declaration stated that a fee agreement was attached, but no such attachment appears in petitioners' appendix of exhibits. However, Cotchett's declaration confirmed that it had been retained by San Mateo and that San Mateo retained "complete control over all aspects of the litigation" and "all decision making authority and responsibility."
Nothing in the record before us indicates that LA County has retained private counsel to represent it in this litigation or contemplates doing so.
[10] The concurring opinion posits that it is a "factual determination that must be made on a case-by-case basis" whether private counsel may assist in the representation of a public entity under a contingent fee agreement in a public nuisance case. This case is not an appropriate vehicle for us to opine on the precise nature of the decision that a superior court would be required to make in a case in which there were factual disputes regarding the nature of the fee agreement or the relationship between private counsel and a public entity.

The issue before us in this writ proceeding was presented to the superior court on undisputed facts and was resolved by the court as a pure question of law. Although it was undisputed that private counsel were engaged solely to assist in-house counsel in representing the public entities, with in-house counsel retaining complete control over the litigation, the superior court, relying solely on Clancy, ruled that contingent fee agreements between public entities and private counsel were categorically barred in public nuisance cases.
Because the superior court resolved the sole issue presented in this writ proceeding as a matter of law, and it is presented to us as a matter of law, this case does not present the issue that the concurring opinion purports to resolve. Whether, in a case in which there are disputed facts, a superior court primarily makes a factual determination or primarily exercises its discretion in deciding whether to permit private counsel to represent a public entity under a contingent fee agreement in a public nuisance action is a question not presented in this case. Resolution of that question must await a case in which it is presented and would necessarily require resolution of the appropriate standard of review for this court to exercise in such a case. As these issues are not before us here, we express no opinion on them.
[11] No doubt the companies will seek disqualification of the public entities' private attorneys if they acquire evidence that the private attorneys are improperly exercising control over this action.
[1] Amicus briefs were filed by the American Chemistry Council; the Association of California Water Agencies; the Chamber of Commerce of the United States and the American Tort Reform Association (joint brief); the Civil Justice Association of California; the California State Association of Counties and the League of California Cities (joint brief); and Public Justice, P.C., Healthy Children Organizing Project; and the Western Center for Law and Poverty (joint brief).